2001 ME 38

**Jeanne E. DOUCETTE**

v.

**Carl P. WASHBURN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 20, 2000.

Decided: Feb. 22, 2001.

Ellyn C. Ballou, Esq., South Freeport, for plaintiff.

Claudia C. Sharon, Esq., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

1. The divorce decree provided that Jeanne Washburn may assume the name Jeanne Ellu-

SAUFLEY, J.

[¶ 1] Carl Washburn appeals from the judgment of the Superior Court (Cumberland County, *Delahanty, J.*) affirming a divorce judgment entered in the District Court (Portland, *Sheldon, J.*). Washburn challenges the court's conclusions regarding the identification and distribution of the parties' marital property. Primarily at issue is the nature of the proceeds of a lump sum workers' compensation settlement received by Washburn during the marriage. We affirm the judgment.

## BACKGROUND

[¶ 2] At the time of the divorce hearing, Carl Washburn and Jeanne Doucette had been married for almost twenty-eight years.[1] Washburn was forty-eight years old and Doucette was forty-six. Neither of the parties has any education beyond high school. They have three adult daughters. Throughout much of the marriage, Washburn worked for S.D. Warren. Doucette worked in the home raising the children and in occasional retail jobs while their daughters were growing up.

[¶ 3] Doucette left the family residence in 1992 or 1993. No decree of legal separation was ever issued. Washburn remained in the family home during the separation and maintained control of the marital assets. Doucette received no spousal support from Washburn during the separation. Doucette now works as an assistant manager for a retail store and earns $8 per hour. She cannot afford a car. She will have to pay $17.60 per week for health insurance through her employer, is earning no pension benefits, and lives with her mother, whom she pays $50 per week for room and board.

[¶ 4] Washburn was injured in several work-related accidents at S.D. Warren. He retired in 1994 with a workers' compensation lump sum settlement of

ra Doucette.

$225,000, and a pension that had a present value of $102,078 at the time of the hearing. Most of the lump sum award still exists and is in an account in Washburn's name only. The account increased in value during the marriage.

[¶ 5] Doucette filed for divorce in August 1996, but the matter was not heard until December 1998. In the divorce judgment, the court determined that Washburn's pension was entirely marital because it was a benefit that Washburn had earned entirely within the period of the marriage. Addressing the lump sum workers' compensation award, the court found that a portion of the award was marital and a portion was nonmarital.[2] It set apart the nonmarital component to Washburn, and went on to divide the parties' marital property. The value of the marital property totalled $331,407 and the nonmarital property totalled $267,019. Ultimately, Washburn received $267,019 in nonmarital property and $58,639 in marital property, totalling $325,658. Doucette owned no nonmarital property. She received $272,768 in marital property. The court denied her request for spousal support.

[¶ 6] Washburn appealed to the Superior Court, and the Superior Court affirmed the judgment of the District Court. Washburn then filed this appeal, and Doucette cross-appealed. Among other things, Washburn contends that the court should have found the entire lump sum workers' compensation award to have been a nonmarital asset and argues that the court erred in awarding a greater proportion of the marital property to Doucette. In her cross-appeal, Doucette contends that the court erred in its treatment of the lump sum workers' compensation award, challenges the court's distribution of marital property, and challenges the court's refusal to award her alimony. Doucette presses her cross-appeal, however, only in the

event that the trial court's judgment is vacated as a result of Washburn's appeal.

## DISCUSSION

[¶ 7] When the Superior Court acts as an intermediate appellate court, we review the decision of the District Court directly. *Kapler v. Kapler*, 2000 ME 131, ¶ 6, 755 A.2d 502, 506. We will disturb a divorce judgment only if (1) the court's factual findings are clearly erroneous, (2) the court has erred as a matter of law, or (3) the court has abused its discretion in crafting the judgment. *Nolette v. O'Neil*, 679 A.2d 1084, 1085 (Me.1996); *Craigue v. Craigue*, 617 A.2d 1027, 1029 (Me.1992). The court's determination of the marital or nonmarital nature of the property owned by the parties is reviewed for clear error. *Sewall v. Saritvanich*, 1999 ME 46, ¶ 14, 726 A.2d 224, 227. We will "not disturb the [marital property] determination if there is competent evidence in the record to support it." *Id.* ¶ 14, 726 A.2d at 227–28.

A. Workers' Compensation Lump Sum Award

[¶ 8] Washburn's lump sum award was allocated by the workers' compensation hearing officer among three separate components; permanent impairment, wage replacement, and medical costs. After hearing the parties' testimony, the court set apart the permanent impairment component to Washburn as his nonmarital property and determined that approximately 87% of the wage replacement and medical cost components were nonmarital because they represented a replacement of assets that Washburn would have received after the divorce was final. The resulting calculation designated approximately 13% of the wage and medical cost components as marital property. Washburn contends that the District Court erred by finding that any part of his workers' compensation

---

2. By the time of the trial, the account containing the lump sum award had grown to $292,748. The court determined that the increase in value of that account should be identified as marital or nonmarital in the same proportions as the original award.

lump sum award was marital property. Alternatively, he argues that the court incorrectly calculated the marital components of the award.

[¶ 9] Because workers' compensation benefits usually represent a replacement for lost earnings, they relate to "the earning power of the [marital] community" if received during the marriage, and therefore, will be determined to be marital property unless proven otherwise. *Cummings v. Cummings*, 540 A.2d 778, 779 (Me.1988).[3] The fact that the benefits are received in the form of a lump sum award does not result in an analysis different from any other asset.[4] The spouse urging the nonmarital status of any or all of the award must prove the existence of the nonmarital component. *Craigue*, 617 A.2d at 1028.

3. 19–A § 953(3) states:
 **3. Acquired subsequent to marriage.** All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.
 19–A § 953(3) (1998).

4. Other jurisdictions have taken a number of different approaches to lump sum workers' compensation and similar awards. One approach classifies the entire award as the separate property of the injured spouse because it is uniquely personal to that individual. *See, e.g., Richards v. Richards*, 59 N.M. 308, 283 P.2d 881, 881 (1955). Other courts have held that, if a workers' compensation settlement award or a personal injury award accrued or was acquired during the marriage, it must be considered marital property unless it falls within an explicit statutory exception. *See, e.g., Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447, 452 (1986); *In re Marriage of Fjeldheim*, 676 P.2d 1234, 1236 (Colo.Ct.App.1983); *In re Marriage of Dettore*, 86 Ill.App.3d 540, 42 Ill.Dec. 51, 408 N.E.2d 429, 431 (1980). A more flexible view looks to the nature of a workers' compensation or personal injury award to determine whether the property is marital property. *See, e.g., Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812, 814 (1980); *Weisfeld*

[¶ 10] There is no dispute here that the award was received during the marriage. It is also evident that the lump sum does not readily fall into one of the specific exceptions to the marital property presumption set out at 19–A M.R.S.A. § 953(2) (1998).[5] It was not acquired before the marriage or after a legal separation; it was not excluded by agreement of the parties; it does not represent the increase in value of property acquired before the marriage; and it certainly was not acquired by gift, bequest, devise or descent. *See id.* Thus, unless Washburn demonstrates that the award represents, in whole or in part, a direct replacement of nonmarital assets pursuant to section 953(2)(B),[6] the award must be treated as marital property. *See Sewall*, 1999 ME 46, ¶ 17, 726 A.2d at 228 (holding that

*v. Weisfeld*, 545 So.2d 1341, 1346 (Fla.1989); *Campbell v. Campbell*, 255 Ga. 461, 339 S.E.2d 591, 593 (1986); *Weakley v. Weakley*, 731 S.W.2d 243, 244–45 (Ky.1987); *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 176 (Minn.Ct.App.1984); *Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430, 431 (1986).

5. Section 953(2) states:
 **2. Definition.** For purposes of this section, "marital property" means all property acquired by either spouse subsequent to the marriage, except:
 **A.** Property acquired by gift, bequest, devise or descent;
 **B.** Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
 **C.** Property acquired by a spouse after a decree of legal separation;
 **D.** Property excluded by valid agreement of the parties; and
 **E.** The increase in value of property acquired prior to the marriage.
 19–A § 953(2) (1998).

6. Although section 953(2)(B) addresses only property exchanged for nonmarital property acquired *before* or *during* the marriage, the concept embodied in this section must include those rare instances where property is received during a marriage "in exchange" for earnings that would have been received in the future, *after* the marriage had ended. *See* 19–A M.R.S.A. § 953(2)(B).

property acquired from the proceeds of nonmarital property is nonmarital).[7]

[¶ 11] The court accepted Washburn's evidence that the lump sum award contained the three distinct types of compensation: permanent impairment, wage replacement, and medical costs.[8] It then went on to determine which, if any, of those components represented compensation for, or replacement of, nonmarital assets. We address each component in turn.

### 1. Wage Replacement Component

[¶ 12] The wage replacement component of a workers' compensation benefit is designed to replace earnings lost to the employee resulting from a work injury. *Cummings,* 540 A.2d at 779. When those benefits are received as weekly or periodic compensation, they are treated as ordinary earnings for purposes of a marital property analysis. *See id.* If received during the marriage, they are marital property. *Id.* When received after the marriage, they are not included in the marital estate. *Id.* at 780.

[¶ 13] A more complex analysis may be necessary when the benefits are received, not in the form of periodic compensation, but in a lump sum award. As always, the analysis must start from the understanding that when the lump sum award is received during the marriage, it

will be presumed to be marital unless proved to be otherwise.[9] That proof may be accomplished by demonstrating that the award is intended to compensate the recipient for earnings that would not have accrued during the marriage. *See id.*

[¶ 14] Washburn received the lump sum award in November of 1994. The divorce judgment was entered on January 5, 1999. Washburn offered evidence that, in allocating the award, the hearing officer assumed that Washburn had a life expectancy of 31.1 years. From the hearing officer's allocations, the court concluded that the wage replacement component was intended to compensate Washburn for lost earnings throughout his remaining lifetime, that is, from receipt of the lump sum award in November of 1994 through approximately November of 2025.

[¶ 15] The court found that Washburn met his burden of proving that part of the wage replacement component was not marital property because it represented earnings that would have accrued to Washburn after the divorce. The court therefore apportioned the wage loss component between the years of marriage and the post-divorce years through 2025, using the date of the divorce judgment as the end point of the marriage. The marital component of the wage replacement was determined by applying the ratio of mari-

7. *Cf. Long v. Long,* 1997 ME 171, ¶¶ 17–18, 697 A.2d 1317, 1324 (holding that if the nonmarital property is exchanged for real property held by the spouses jointly, it will lose its nonmarital status).

8. The workers' compensation hearing officer allocated $200,000 of the award among the three components as follows: (1) $101,563.12 (45 .1%) was allocated to future lost wages; (2) $56,988.88 (25.3%) was allocated to future medical expenses; and (3) $41,448 (18.4%) was allocated to permanent impairment. The court rejected the hearing officer's allocation because of its concerns that the allocation was unreliable. The court then substituted its own determination that the award should be allocated equally among the three components. Because the court's reallocation benefitted Washburn by increasing substantially

the amount allocated to the nonmarital component of permanent impairment, we do not reach Washburn's assertion that the court erred in engaging in the reallocation.

For reasons unclear to the parties and the court, the hearing officer left $25,000 of the award unallocated. Because the $25,000 had been spent before the divorce proceeding, the court did not attempt to allocate it to either of the parties.

9. If the benefits are paid in a lump sum after the dissolution of the marriage, the marital presumption does not apply, *see* 19–A M .R.S.A. § 953(2)(C), and, to the extent that the award represents compensation for lost earnings that accrued after the divorce, the award is nonmarital. *Cummings,* 540 A.2d at 780.

tal years (4.1 years of marriage following receipt of the award—November 1994 to January 1999) to Washburn's life expectancy as of November 1994 (31.1 years). That ratio yielded a marital property component of approximately 13%.

[¶ 16] In sum, the court determined that the amount of the wage replacement award attributable to the time after the receipt of the lump sum award during which the parties remained married was marital property and that the remaining amount represented wage replacement for the years following the divorce. Because Washburn's post-divorce earned income would be nonmarital property, wage replacement for those earnings would similarly be nonmarital. We find no error in the court's application of the law to the wage replacement component. The court correctly allocated replacement for marital earnings to the marital estate and set aside replacement for nonmarital earnings as Washburn's separate property.[10]

### 2. Permanent Impairment

■ [¶ 17] The amount allocated to permanent impairment may be understood to be analogous to a separate pain and suffering award in a personal injury dispute.[11] Looking to the workers' compensation law regarding Washburn's benefits suggests that the permanent impairment component was intended to compensate Washburn for loss directly associated with the loss or reduced use of a part of his body. When a permanent impairment award is awarded separately from compensation for the loss of earning capacity, the award is singular to the person suffering the loss.[12] The very personal nature of a permanent impairment award, as it existed

---

**10.** Washburn also argues that the court should have concluded that the entire component was nonmarital because the parties were living apart during the latter years of the marriage. There is no merit in that contention. *See* 19–A M.R.S.A. § 953(2)(C); *see also Kaye v. Kaye,* 538 A.2d 288, 289 (Me.1988) ("In the absence of a judicially sanctioned separation, the parties' agreement to a de facto separation does not prevent the marital presumption from attaching to subsequently acquired property.").

**11.** Permanent impairment and pain and suffering awards that do not arise from the loss of a marital asset are often considered to be nonmarital. *See* AMERICAN LAW INSTITUTE, *Principles of the Law of Family Dissolution: Analysis and Recommendations* § 4.08(2) (Proposed Final Draft, Feb. 14, 1997). *See also Weakley,* 731 S.W.2d at 245 ("A personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity is peculiarly personal to the party who receives it."). Injury to or loss of a specific body part may also be understood to represent the loss of a "nonmarital asset." *See* 19–A M.R.S.A. § 953(2)(B). *But see Heilman,* 291 N.W.2d at 185 (holding that a personal injury claim awarded to the husband for the loss of an eye was marital property because the injury occurred during the marriage).

However, damage awards in personal injury actions are not always easily identified as compensating for any particular component of the plaintiff's alleged damages. *See, e.g.,*

AMERICAN LAW INSTITUTE, *supra* § 4.08 cmt. c. Comment c states:

> Because personal injury awards do not often specify the relative amounts allowed for pain and suffering, lost wages, and reimbursement of expenses, the allocation necessary to apply the rule of this section will usually need to be made at the time of dissolution. A dissolution court presented with this question must resolve it on the basis of the evidence then available, recognizing that precisely accurate allocations are often not possible.

*Id.*

**12.** Permanent impairment awards have not always been separable from wage loss benefits. Prior to 1965, both permanent impairment benefits and incapacity benefits were intended to compensate employees for lost earning capacity. *Campbell v. Bates Fabrics, Inc.,* 422 A.2d 1014, 1015 n. 5 (Me.1980); *Phillip's Case,* 123 Me. 501, 124 A. 211, 212–13 (1924); *Foster's Case,* 123 Me. 27, 121 A. 89, 90 (1923). In 1965, the Legislature amended former section 56 to provide that permanent impairment benefits could be awarded "[i]n addition to" benefits for incapacity. P.L.1965, ch. 408, § 5. *See, e.g.,* 39 M.R.S.A. § 56 (Pamph.1986), *repealed and replaced by* P.L.1987, ch. 559, Pt. B, § 31 ("Compensation under this section is in addition to any compensation under section 54–B or 55–B received by the employee."). Until recently, and since 1965, the award for permanent impairment had no relation to work incapacity or wage replacement. *Delorge v.*

in Maine law at the time of Washburn's award, separated it from association with the marital estate. Because it compensated the spouse for a loss that is uniquely personal, that is, the loss of or reduced use of a part of the human body, the court did not err in determining that the permanent impairment component constituted a non-marital asset.[13]

### 3. Medical Costs

 [¶ 18] Determining the marital or nonmarital nature of the medical costs component of the award should be a straightforward process. As with any other asset, the award will be presumed marital unless the spouse urging its nonmarital status demonstrates that a specific amount has been allocated for reasonably certain future medical expenses, and thus, that the award compensates the spouse for anticipated, post-marital expenses.

 [¶ 19] The record before us is devoid of any specific evidence regarding medical expenses anticipated in the future or even incurred during the marriage. Washburn argues that since Doucette has not proved the presence of marital expenditures, the court was required to find that the medical cost component was nonmari-

tal. Nothing could be clearer, however, than our often repeated admonition that the spouse urging a nonmarital designation has the burden of presenting evidence in support of that conclusion. *See Clum v. Graves*, 1999 ME 77, ¶ 10, 729 A.2d 900, 904–05.

[¶ 20] Washburn failed to meet that burden. The record contains little more than Washburn's bald assertion that no marital funds had been expended on medical care. He presented no specific evidence that he would incur medical expenses after the marriage ended. On this record, the medical costs component would have to be determined to be a marital asset. The court, however, allocated the medical costs using the same ratio as applied to the wage replacement component, resulting in the determination that only approximately 13% of the medical component was marital. Because Washburn received the benefit of the court's calculation, and because Doucette does not challenge the result in light of our affirmance of the judgment, we do not disturb it.[14]

### B. Distribution of Marital Property

[¶ 21] The total marital estate was valued at $331,407. Washburn received

---

*NKL Tanning, Inc.*, 578 A.2d 1173, 1174 (Me. 1990). Rather, such an award was "based on the loss of function of part of the body due to work-related injury." *Id.*

This approach has been revised again, however. The Legislature recently abolished permanent impairment compensation and replaced it with a schedule that establishes periods of presumptive total incapacity, thus changing the nature of the award from a separate compensation for the lost use of the body to a long term earnings replacement. 39–A M.R.S.A. § 212 (Pamph, 2000). *See also Boehm v. Am. Falcon Corp.*, 1999 ME 16, ¶ 9, 726 A.2d 692, 693; *Clark v. Int'l Paper Co.*, 638 A.2d 65, 67 (Me.1994). This change does not apply here because the amendments do not retroactively abolish permanent impairment benefits for pre–1993 injuries. *See Clark*, 638 A.2d at 67.

13. Because this component, when clearly established, will routinely be set aside as nonmarital, we recognize the potential for manipulation of the component parts of a lump sum

award to the possible detriment of the marital estate. We need not address that issue here.

14. Ultimately, the court set aside one-third of the award ($97,582.67) entirely to Washburn, as nonmarital property for permanent impairment. Applying the 4.1/31.1 ratio (approximately 13%) to the remaining two-thirds of the award (292,748–97,582.67=195,165.33), the court determined that $25,728.64 (195,-165.33 × .13183) was marital property and that the remainder was the nonmarital property of Washburn. Thus, the nonmarital portion of the workers' compensation settlement award totaled $267,019.36. Because we reject Washburn's claim that the entire lump sum award was nonmarital, we also reject his assertion that the increase in value of the account containing the lump sum award should have been determined to be entirely nonmarital. The court's calculations allocated any increase in value in approximately the same proportions as its marital versus nonmarital allocation of the award itself.

$58,639, or approximately 18% of the marital assets. In addition, the court set apart to him $267,019 in nonmarital property. Accordingly, his assets upon dissolution of the marriage totaled $325,658. Doucette, who had no nonmarital property, received the lion's share of the marital assets—$272,768. The court awarded no spousal support to either party.

[¶ 22] Washburn contends that the court's distribution of marital property represents a plain and unmistakable injustice, that the court abused its discretion, and that the court should not have entwined Doucette's request for spousal support with its division of marital property.

■■■ [¶ 23] We review the disposition of marital property for an abuse of discretion, *Craigue*, 617 A.2d at 1029, and we will overturn a divorce court's division of marital property if there is a "violation of some positive rule of law or if the division results in a 'plain and unmistakable injustice, so apparent that it is instantly visible without argument.'" *Pederson v. Pederson*, 644 A.2d 1045, 1046 (Me.1994) (citations omitted). In dividing marital property, the court must "divide the marital property in proportions the court considers just after considering all relevant factors." 19–A M.R.S.A. § 953(1) (1998).[15]

■■■ [¶ 24] A just distribution of property is not synonymous with an equal distribution. To the contrary, we have made it clear that a court is not required to divide the marital property equally, but is required to make the division fair and just considering all of the circumstances of the parties. *See Pederson*, 644 A.2d at 1046; *Pongonis v. Pongonis*, 606 A.2d 1055, 1058 (Me.1992); *Deditch v. Deditch*, 584 A.2d 649, 652 (Me.1990); *Robinson v. Robinson*, 554 A.2d 1173, 1176 (Me.1989). "Although the idea of an equal allocation may certainly be entertained by a divorce court, it carries no presumptive weight either in its favor or against it." *Robinson*, 554 A.2d at 1176. In addition, the court is specifically authorized to consider the "value of the property set apart to each spouse" in reaching an equitable distribution of the marital property. 19–A M.R.S.A. § 953(1)(B).

■■■ [¶ 25] In the absence of a weighted award of the marital property, Washburn would have exited the marriage with extensive assets, leaving Doucette with little because Doucette held no nonmarital property. Given Doucette's limited earning capacity, spousal support would almost certainly have been necessary. In its supplemental findings, the court indicated that one of its primary considerations in the division of property was to eliminate Doucette's need for spousal support. Because the court "may also consider the division of marital property that its decree makes, and whether the property distribution provides the [spouse] with the income necessary to meet her living expenses" when considering the award of alimony, *Deditch*, 584 A.2d at 652, the court did not err in determining that a weighted distribution of the marital assets was an appropriate substitute for a spousal support award.[16]

15. Section 953(1) states, in relevant part:

> **1. Disposition.** [T]he court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors, including:
> **A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
> **B.** The value of the property set apart to each spouse; and
> **C.** The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable periods to the spouse having custody of the children.
> 19–A § 953(1) (1998).

16. *Cf. Marquis v. Chartier*, 592 A.2d 169, 172 (Me.1991) (holding that the court did not abuse its discretion in awarding a lump sum of $10,000 in lieu of alimony).

[¶ 26] Nor did the court err in concluding that spousal support would have been necessary absent the weighted distribution of marital property. The court had before it two individuals with no post-high school education who had accumulated a modest amount of assets during the marriage. The primary source of income during the marriage, Washburn's S.D. Warren salary, had been replaced by the receipt of disability payments and a lump sum workers' compensation award, most of which would be awarded to Washburn. Doucette has very limited work capacity beyond minimum wage employment, she has no car, lives with her mother whom she pays $50 per week for room and board, has no pension other than her $12,000 IRA, and must pay $17.60 per week for health insurance. Washburn, in addition to being awarded most of the income from the workers' compensation settlement, owns a truck and two boats, lived rent-free for many years in the marital home, and paid no spousal support to Doucette.

[¶ 27] Thus, the facts would have supported an award of spousal support to Doucette.[17] No statute or positive rule of law precludes the court from considering post-divorce need in its award of marital property. Providing for the financial needs of one spouse through the division of marital property is both contemplated by the statute and supported by the facts in this case. *See* 19–A M.R.S.A. § 953(1). *See also Crooker v. Crooker*, 432 A.2d 1293, 1296 n. 1 (Me.1981).

[¶ 28] Moreover, the award of a larger share of marital property was designed by the court to allow the parties to separate their financial matters permanently, a goal which we have encouraged. *See Berry v. Berry*, 658 A.2d 1097, 1099 (Me.1995) (holding that a court should attempt to "divide the marital property in such a manner as to avoid continued financial interaction between the parties"). In addition, the court considered the tax consequences of a support award. The court was concerned that Washburn might not be able to pay periodic spousal support and believed that imposing a lump sum spousal support award would cause him to incur capital gains taxes on the sale of assets necessary to realize the lump sum.

[¶ 29] The division of marital property does not represent a plain and unmistakable injustice, and the court did not exceed the bounds of its discretion in entering the award.[18]

The entry is:

Judgment affirmed.

---

17. When the earning capacity of the parties is significantly disparate, fairness may require a different approach. *Cf. Sewall v. Snook*, 687 A.2d 234, 236 (Me.1996); *Noyes v. Noyes*, 662 A.2d 921, 923 (Me.1995); *Bayley v. Bayley*, 611 A.2d 570, 571 (Me.1992). Contrary to Washburn's contentions, however, our holding in those cases do not preclude the court from considering post-divorce need in its allocation of marital property. *Bayley* actually directs the court to consider the division of marital property and award of alimony as related in order to assess the "fairness of all the economic provisions of the judgment." *Bayley*, 611 A.2d at 571. The court must be cautious in identifying the nature of the award, however. *See Ketchum v. Ketchum*, 1998 ME 62, ¶¶ 4, 6, 707 A.2d 803, 804–05 (remanding the case because the $50 per week spousal support award was actually in the nature of a property distribution).

18. Because we have rejected Washburn's arguments on appeal, we do not address Doucette's cross-appeal.