2001 ME 130

**Sandra E. LIBBY**

v.

**Patrick L. LIBBY**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2001.

Decided: Aug. 8, 2001.

Martha J. Harris, Esq., Paine, Lynch & Harris, Bangor, for the plaintiff.

Dawn M. Pelletier, Esq., Pelletier & Faircloth, Bangor, for the defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Sandra Libby appeals from the judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) affirming the divorce judgment entered in the District Court (Lincoln, *Stitham, J.*) granting her a divorce from Patrick Libby, dividing marital property, and awarding child and spousal support through June 1, 1999. Sandra argues that the property division was unjust and that the court erred by terminating support payments after June 1, 1999. Finding no error, we affirm the judgment.

[¶ 2] The underlying facts found by the District Court may be briefly summarized as follows: Sandra and Patrick Libby were married on August 3, 1985 and had two children together. Patrick has been a full-time truck driver for seventeen years. He hauls sawdust between Lincoln and Ashland, Maine, and is paid $57.80 for each trip. Ordinarily, he makes two trips a day and earns anywhere from $28,000 to $35,000 a year. For the first ten years of the marriage, Sandra worked at various jobs for seven or eight dollars an hour. The couple felt that Sandra could realize greater employment opportunities if she attended nursing school at Husson College. Their plan was to have Sandra gain the education necessary for her to secure a good job and then for Patrick to do the same. In order for Sandra to attend college, Patrick had to increase his workload to three trips a day, at least fourteen hours of work, for five days a week. In addition, as Sandra became more involved in school, Patrick's role as a homemaker necessarily increased.

[¶ 3] At the time of the divorce hearing, Sandra was in her fourth year and was about to graduate. She did extremely well and earned many honors. Approximately half of her tuition expenses were paid through various grants and scholarships that she was awarded. Sandra borrowed $20,000 in student loans to cover the remainder. Eastern Maine Medical Center verbally promised her a job after graduation though the director of human resources at the hospital testified that they were currently doing "very limited" hiring. As an entry-level nurse at Eastern Maine Medical Center, she would earn approximately $16.60 an hour. From her own investigation, Sandra testified that she could earn about $14 an hour in Lincoln and $19 an hour in Bangor.

[¶ 4] Because of her education, Sandra now enjoys many opportunities for advancement in the nursing field. Patrick, on the other hand, enjoys no opportunities for advancement as a truck driver. Even though he has worked for the same company for seventeen years, he earns the same as an entry-level truck driver.

[¶ 5] On February 22, 1999, the District Court entered a divorce judgment wherein it awarded Sandra assets with a collective value of approximately $23,000 [1] and ordered her to pay the $20,000 student loan debt. It awarded Patrick assets, including the marital home, with a total value of roughly $105,000 and required him to pay debts totaling $70,360.12.[2] In addition, the

---

1. The collective value of the marital assets awarded to each party is based on valuations that Sandra provided and that Patrick has not challenged.

2. According to the valuations provided by Sandra, Patrick is assigned $66,640 of the

marital debt. In addition to marital debts, the District Court required Patrick to pay $3720.12 of Sandra's attorney fees and costs. Patrick's total liability under the divorce judgment, therefore, is $70,360.12.

court ordered Patrick to continue paying child and spousal support through June 1, 1999. The court noted that Sandra would probably be employed by that date. After June 1st, the court ordered that any spousal support obligation be terminated and that the parties exchange child support affidavits to work out a new child support order. Sandra appealed the judgment to the Superior Court. On November 24, 2000, the court affirmed the divorce judgment.[3] Sandra then appealed to this Court.

■ [¶ 6] A divorce court must "divide the marital property in proportions the court considers just after considering all relevant factors." 19–A M.R.S.A. § 953(1) (1998). We review the divorce court's disposition of marital property for an abuse of discretion and will overturn its decision only "if there is a violation of some positive rule of law or if the division results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Doucette v. Washburn*, 2001 ME 38, ¶ 23, 766 A.2d 578 (quotations omitted).

■ [¶ 7] Contrary to Sandra's contentions, the District Court's property division was not a plain and unmistakable injustice. "A just distribution of property is not synonymous with an equal distribution." *Id.* at ¶ 24. A divorce court is required to consider the "economic circumstances of each spouse at the time the division of property is to become effective." 19–A M.R.S.A. § 953(1)(C). For at least four years, Patrick made considerable sacrifice to help Sandra achieve her goal of obtaining a nursing degree. With her de-

gree, Sandra can now find a well paid job in a field with many opportunities for advancement. Patrick's sacrifice was to be reciprocated. Instead, he has been left with little opportunity for change and no chance for advancement in his job as a truck driver. The parties' total net assets were meager. Under the circumstances, although there is a significant disparity in the value of the property awarded to each party, the division is not plainly and unmistakably unjust.

■ [¶ 8] Sandra also argues that the District Court erred by terminating child and spousal support on June 1, 1999 because, as of the date of the judgment, her future employment prospects were too speculative.[4] We review a divorce court's decision regarding spousal support for abuse of discretion and will overturn its determination only when it "violates a positive rule of law or results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Hedrich v. Hedrich*, 1998 ME 248, ¶ 2, 720 A.2d 1157 (quotations omitted). Contrary to Sandra's contentions, her future employment and economic prospects were sufficiently certain at the time of the divorce hearing for the court to award spousal support for a limited time. Sandra did extremely well in nursing school and earned many honors. She will enjoy many opportunities for advancement in the nursing field. She had been verbally promised a job at Eastern Maine Medical Center and would earn approximately $16.60 an hour. Under the circumstances, the court did not exceed the bounds of its

---

3. The Superior Court entered its judgment on appeal more than twenty months after the District Court entered the divorce judgment. This inordinate delay is largely attributable to three requests that Sandra made for an extension of time to file her briefs in the Superior Court.

4. Although the court did order that neither party receive spousal support after June 1, 1999, it did not order that child support payments be terminated. Rather, it ordered that both parties exchange child support affidavits and agree upon the details of a child support work sheet and proposed child support order after Sandra has secured employment.

discretion by terminating spousal support after June 1, 1999.

The entry is:

Judgment affirmed.

CALKINS, J., with whom CLIFFORD, J., joins, dissenting.

[¶ 9] I respectfully dissent. In my view the property division has resulted in a plain and unmistakable injustice. The end result is that Sandra receives a net value of marital property of $3000, and Patrick receives a net value of almost $35,000, which is more than ten times the value of the property distributed to Sandra. While this lopsided division may be justified in some cases, such justification is not present in this case.

[¶ 10] The Court rationalizes the division by stating that, "Sandra can now find a good paying job in a field with many opportunities for advancement." This rationalization is not supported by the evidence presented at trial. Although a large disparity in the incomes of the parties might provide the basis for giving the bulk of marital property to one party, the evidence regarding Sandra and Patrick's incomes does not support the division in this case. The trial court made no findings as to Sandra's income. The court stated: "Sandra's job prospects are far too speculative at this point for the Court to determine what she will wind up earning and what her benefits will be." The evidence as to Sandra's potential income was that if she obtains a position at Eastern Maine Medical Center at $16.60 per hour, she will earn between $31,075 and $34,528 per year.[5] No contrary evidence was presented other than Sandra's testimony that she could earn $14 per hour in Lincoln and $19 per hour in Bangor. Patrick earns $28,000 to $35,000 per year hauling sawdust. The difference in their annual incomes is not so great as to justify the large disparity in the property division.

[¶ 11] In all other respects, Patrick and Sandra are in basically equal circumstances. They are close to the same age; there was no evidence of ill health; they agreed to share responsibility for the children, including the primary physical residence.

[¶ 12] Because the immediate financial and other circumstances of the parties are roughly equal, the only rationale for the wide disparity in the property division is Sandra's opportunity for advancement because of her professional degree. Neither this Court nor the trial court acknowledge that this rationale is similar to holding that a professional license is marital property. In *Sweeney v. Sweeney*, 534 A.2d 1290, 1291 (Me.1987) we held that a professional license is not property subject to distribution in a divorce. We concluded that distribution of a professional degree was, in essence, the distribution of earning capacity, and that the determination of future earning capacity was too speculative to distribute. *Id.* Furthermore, we noted that income from future earnings would be property acquired *after* marriage, not property acquired *during* marriage. *Id.* (citing *Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527 (1982)).

[¶ 13] The Court's holding today that allows the spouse, who does not have the professional degree, to receive marital property valued at ten times that of the property awarded to the spouse with the professional degree on the sole ground that the professional spouse will be able to advance in her profession is equivalent to distributing the value of a professional license. The same reasoning that we uti-

---

**5.** Patrick's witness, the human resources director from Eastern Maine Medical Center, testified that the starting salary for a staff nurse was $16.60 per hour for a 36 to 40 hour week.

lized in *Sweeney* to hold that a professional license is not subject to division is applicable to this case. Although the trial court found that in the future Sandra will be able to advance in her profession, the trial court made no findings as to what that advancement would entail. There was no evidence presented as to what Sandra might be able to earn beyond the immediate future or what concrete economic benefits might come from her advancement. Thus, the rationale for awarding her a significantly smaller portion of the marital estate is based on pure speculation of Sandra's future circumstances.[6] Such speculation does not warrant a ten-fold disparity in the distribution of the marital property.

[¶ 14] I do not mean to suggest that an equal distribution is required. In my opinion, insofar as distribution is based primarily upon parties' financial circumstances, as in this case, the equitable distribution must be grounded on "[t]he economic circumstances of each spouse at the time the division of property is to become effective . . . ." 19–A M.R.S.A. § 953(1)(C) (1998). I would vacate the property distribution and remand to the trial court for an equitable distribution based upon the parties' circumstances "at the time" and not upon speculation of future circumstances. I would also vacate that portion of the judgment denying spousal support to either spouse after June 1, 1999, and allow the court to determine whether spousal support under the new statute is appropriate. *See* 19–A M.R.S.A. § 951–A(2)(C) (Supp. 2000).[7]

6. We recently found it inappropriate to speculate, for child and spousal support purposes, on the income that a party would receive from court-ordered payment and from a sizeable asset. *Dargie v. Dargie*, 2001 ME 127, ¶¶ 24, 28, 778 A.2d 353 (2001). Speculation about future income is similarly inappropriate in the context of marital property division.

7. This statute, applicable to orders issued after September 1, 2000, 19–A M.R.S.A. § 951–A(10), provides for "reimbursement support" when one spouse has made substantial contributions to the educational or occupational advancement of the other spouse and when the court determines that the parties' circumstances "do not permit the court to fully address equitable considerations through its distributive order pursuant to section 953," *id.* § 951–A(2)(C). Because in this case there was no evidence as to how future advancement translates into economic terms, any distribution of future advancement is speculative, meaning that the court cannot "fully address equitable considerations through its distributive order pursuant to section 953."