2001 ME 167

**Alice CHAMBERLIN**

v.

**Russell CHAMBERLIN.**

Supreme Judicial Court of Maine.

Argued: Nov. 6, 2001.

Decided: Dec. 12, 2001.

---

Ronald P. Lebel, Esq. (orally), Skelton, Taintor & Abbott, Auburn, for plaintiff.

Daniel A. D'Auteuil Jr., Esq., (orally), Elliott L. Epstein, Esq., Isaacson & Raymond, Lewiston, for defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

██ [¶ 1] Russell Chamberlin appeals from a divorce judgment entered in District Court (Lewiston, *McElwee, J.*) challenging the division of marital property and debt and the award of spousal support

to Alice Chamberlin.[1] Alice cross-appeals from the courts deviation from the child-support standards. We affirm the judgment.

## I. Division of Marital Debt

■ [¶ 2] Russell argues that the District Court erred in disproportionately assigning marital debt to him and in characterizing marital assets as Alice's nonmarital assets. In particular, Russell asserts that he should not exclusively have been assigned debts amounting to $39,902 arising from his mental health problems during the marriage and other debts to his father incurred to assist the parties in the purchase of a marital home.

[¶ 3] Russell incurred substantial debt for medical expenses as a result of his deteriorating mental health and alcohol abuse. Almost all of this debt is owed to Russell's parents who assisted Russell in getting adequate treatment. In addition, Russell's father helped Russell and Alice by loaning them $50,000 for the purchase of their first home, taking a promissory note in return. Until the divorce, Russell's father never asked for repayment on the note.

■ [¶ 4] We review the trial court's division of marital debt and property for an abuse of discretion. *Libby v. Libby,* 2001 ME 130, ¶ 6, 781 A.2d 773, 775. "A just distribution of property is not synonymous with an equal distribution." *Doucette v. Washburn,* 2001 ME 38, ¶ 24, 766 A.2d 578, 586. We cannot say that the assignment of debt is an abuse of discretion.

## II. Determination of Marital and Nonmarital Property

■ [¶ 5] Russell also argues that the court erred in characterizing property that passed through a checking account to be Alice's nonmarital property. Alice deposited three distributions from her mother's estate in the amount of $75,666.12 into a checking account to which both Russell and Alice had access. She later established several investment and trust accounts with money drawn from that account, including $20,000 to establish an investment account at United Asset Management Investment Services, Inc.

■ [¶ 6] We review the trial court's determination of marital and nonmarital property for clear error. *Sewall v. Saritvanich,* 1999 ME 46, ¶ 14, 726 A.2d 224, 227. Although property acquired by a party subsequent to marriage is presumed to be marital, a party may rebut this presumption by showing that it was acquired by bequest. 19–A M.R.S.A. § 953(2) & (3) (1998). We held in *Long v. Long,* 1997 ME 171, 697 A.2d 1317, however, that real property held in joint tenancy is marital property irrespective of the source of funds used to purchase that property. *Id.* ¶¶ 16–17, 697 A.2d at 1324. In contrast to our holding in *Long,* we have never held that deposit accounts are subject to such automatic treatment as marital assets when funds are placed briefly in accounts, and we decline to do so now.[2]

---

1. Russell further asserts that the court lacked jurisdiction to hear Alice's divorce petition because Alice failed to respond in time to his motion to dismiss, under M.R. Civ. P. 7(e). Russell's assertions lack merit because M.R. Civ P. 80(d) explicitly states that M.R Civ. P. 7(e) does not apply in divorce actions. M.R. Civ P. 80(d).

2. We have stated that "if a party presents evidence to show that the purchase of such property was financed in part with nonmarital funds, the portion of the property attributable to the nonmarital funds can remain nonmarital." *Clum v. Graves,* 1999 ME 77, ¶ 10, 729 A.2d 900, 904–905.

[¶ 7] In this case, Alice testified that she and Russell had an agreement that fifty-thousand dollars of her inheritance would be reserved for her. Russell has never contested that he and Alice had such an agreement. Alice placed inherited funds in the checking account for a short time before setting up separate investment funds and trust funds for the children. Alice gave every indication that she intended to manage these funds on her own. The trial court did not exceed the bounds of its discretion in finding these funds to be nonmarital.

### III. Sufficiency of Trial Court's Findings

 [¶ 8] Russell assigns the trial court error for its refusal to issue additional specific findings on Alice's earning capacity, Russell's contributions to the marital estate, and equivalence of the parties' economic circumstances. We review the trial court's findings of fact for clear error. *Tibbetts v. Tibbetts,* 2000 ME 210, ¶ 6, 762 A.2d 937, 939. The trial court's initial findings and conclusions run for sixteen pages; the court also issued post-judgment findings. Noting that Alice has duties as the custodial parent, the court also found Alice's "voluntary underemployment to be a 'lifestyle choice.'" Weighing these factors, the court chose not to impute additional earnings to Alice. The record provides ample support for these findings and they are not clearly erroneous. Although the court considered the marital contributions of both parties, it chose not to make specific findings about those contributions. Russell's assertion that the court erred in not making specific findings on his marital contribution is without merit. The trial court took judicial notice of Russell's greater living costs, but denied admission of Russell's statistical evidence of those greater costs on the grounds that it was not in a position to make accurate comparisons of living costs in Lewiston, Maine and New York City. Based on this evidentiary ruling, it was not clear error for the trial court to refuse to issue Russell's requested finding.

### IV. Departure from Child Support Guidelines

 [¶ 9] Alice cross-appeals, asserting that the trial court erred in granting Russell a deviation from the child support guidelines to accommodate his travel costs. Alice argues that the guidelines only allow for accounting for the travel costs of children. Although the child support guidelines do provide for deviations for the cost of a child's visitation travel, they also provide for deviations if the court finds that strict application of the standards would be "unjust, inappropriate or not in the child's best interest." 19–A M.R.S.A. § 2007(3)(P) & (Q) (1998). The trial court did not exceed the bounds of its discretion finding that Russell's travel costs warranted a deviation from the child support guidelines.

[¶ 10] Russell's other arguments are without merit.

The entry is:

Judgment affirmed.