2003 ME 17

**Michael J. MURPHY**

v.

**Stephanie C. MURPHY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 26, 2002.

Decided: Feb. 14, 2003.

———

Barbara A. Cardone, Bangor, for plaintiff.

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Michael J. Murphy appeals and Stephanie Murphy cross-appeals from a divorce judgment entered in the District Court (Bangor, *Russell, J.*). Michael contends that the trial court erred in awarding transitional spousal support to cover Stephanie's dental and medical expenses. Michael also challenges the amount of the spousal support. Stephanie contends that the trial court erred in its determination and valuation of marital property, its division of marital property, and its failure to order Michael to pay her legal fees. We affirm the judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] The parties met and began living together over twenty-six years ago in New York. In 1980, they moved to Massachusetts and purchased a home as joint tenants. Michael worked for New England Electric for about ten years. During this time, the parties held themselves out as married. On July 5, 1985, their son Brendon was born, and the parties agreed that Stephanie would stay at home and take care of him. Stephanie also home schooled Brendon. After approximately ten years in Massachusetts, Michael accepted a job with an engineering firm in Maine. Two years later, the parties bought the current marital home in Hampden using about $25,000 realized from the sale of their Massachusetts home. In 1993, Stephanie decided that they needed to be married because she was concerned that if anything happened to Michael she and Brendon would not be taken care of, so the couple married in October of 1993. In 1995, Michael started his own engineering consultant business. Stephanie helped Michael with the management of this business for about one year. In the fall of 1998, Stephanie began work as a psychiatric technician at Acadia Hospital. She was trained at the hospital and currently works full time.

[¶ 3] The divorce proceeding was commenced in September of 2000. Prior to the trial, the couple sold real estate they owned in Brewer, and the net proceeds of approximately $4600 went to Stephanie.

[¶ 4] After the parties separated, Michael and Brendon continued to live in the marital home in Hampden. The parties agreed that after the divorce, Brendon would continue to live with Michael, but would visit Stephanie whenever Brendon wanted and the parties would share parental rights and responsibilities. Stephanie lives in an apartment and shares expenses with a domestic partner, who earns approximately $28,000 a year. Stephanie previously took a sign language course and would like to go to college to earn a degree so that she could become an American sign language interpreter. She would be able to take some electives near where she lives, but would have to attend the University of Southern Maine for two years to take the core courses in sign language.

[¶ 5] Stephanie testified that she is in need of a substantial amount of dental work. She estimated that the cost of the extractions and bridge work needed would be about $11,250. Stephanie also testified that she would like to continue in therapy

to treat her depression, for which she takes prescription medication.

[¶ 6] In Michael's financial statement, the marital home is valued at $119,300. Philip Cormier, a licensed real estate broker who conducted an appraisal on the property, testified that, if the property were placed on the market, he would suggest a listing price of $119,000 to $125,000 in order to sell the property within three or four months, and said that the property would probably yield a price of approximately $117,000. He acknowledged that the real estate market was doing well and that some houses were actually selling at list price or higher.

[¶ 7] Michael has a retirement account from his ten years of employment in Massachusetts, prior to his marriage, which he rolled over into an account with A.G. Edwards when he left his job in Massachusetts. Michael testified that he has not added any money to this account since that time. The account has a value of approximately $115,000 and stands in Michael's name alone.

[¶ 8] Michael's mother died in the late 1990s, and left an estate worth nearly half a million dollars. Prior to her death, Michael and his mother had a joint account with a value of about $43,000. After her death, Michael separated this account into two accounts in local banks. One account worth about $30,000 was placed in the parties' joint names, but was used only to pay costs of his mother's estate. Stephanie had a debit card for this joint account, but she never used it. After the parties had separated and the estate costs had

been paid, Michael placed this money in his separate account. Michael was expected to receive $240,000 from his mother's estate and Brendon was expected to receive $120,000.

[¶ 9] The court found the Hampden marital home to be worth $119,300 and awarded the property to Michael, with Michael assuming the balance on the mortgage of approximately $91,000. The court awarded the $4000 car to Michael and the $9000 car to Stephanie. The court set apart various other items of tangible personal property to each party, with items valued at $15,000 to Michael, and items worth $5000 to Stephanie

[¶ 10] The court determined that the $115,000 retirement account was Michael's nonmarital property. The court also determined that the money Michael is to receive from his mother's estate is nonmarital property. Thus, the court concluded that Michael had nonmarital assets of approximately $355,000, and Stephanie had none. Michael received approximately $78,300 and Stephanie $18,600 from the court's initial division of the marital estate,[1] but to ensure a more equitable division, the court ordered Michael to pay Stephanie $50,000.

[¶ 11] The court found Stephanie's earning potential is approximately $18,000, and Michael's earning capacity to be about $90,000 a year. Although Stephanie has less income potential than Michael, given Stephanie and her partner's combined income, the court concluded that she could "maintain a reasonable standard of living without general support." Taking into ac-

---

1. Stephanie received a car worth $9000, tangible personal property worth $5000, and $4600 from the proceeds of the sale of the parties' Brewer property, which reaches a total of $18,600. Michael received the marital home worth $119,300, but also assumed the $91,000 mortgage. Michael also received a car worth $4000, tangible personal property worth $15,000, a business account totaling $13,000, and personal accounts totaling $1800. The actual total of these items is $62,100, but the court's order states it is $78,300. Neither party pointed out this mathematical inconsistency. It is possible that the $1800 figure was a typographical error that should have been $18,000, which would put Michael's total award of marital property at $78,300.

count Stephanie's medical, dental, and educational needs, as well as her attorney fees obligation, the court awarded her transitional spousal support in the amount of $60,000.

## II. MICHAEL MURPHY'S APPEAL

### A. Spousal Support—Purposes

[¶ 12] In contending that the trial court erred in awarding Stephanie transitional spousal support to cover her dental and medical expenses, Michael argues that those two categories do not fall within the definition of transitional support. We disagree.

[¶ 13] Issues regarding spousal support are within the sound discretion of the trial court. *Noyes v. Noyes,* 662 A.2d 921, 922 (Me.1995). Title 19–A M.R.S.A. § 951–A(2) (Supp.2002), lists the five possible types of spousal support that a trial

court may award, including general support and transitional support.[2] There is a rebuttable presumption that general support will not be awarded when the marriage is less than ten years in duration.[3] 19–A M.R.S.A. § 951–A(2)(A).

[¶ 14] Transitional support, "may be awarded to provide for a spouse's transitional needs, including, *but not limited to:* (1) Short-term needs resulting from financial dislocations associated with the dissolution of the marriage; or (2) Reentry or advancement in the work force, including, but not limited to, physical or emotional rehabilitation services, vocational training and education." 19–A M.R.S.A. § 951–A(2)(B) (emphasis added). In determining an award of spousal support, the court must consider a number of factors, which include "health and disabilities of each party," and "any other factors the court considers appropriate."[4]

2. Title 19–A M.R.S.A. § 951–A (2) in pertinent part provides as follows:

**2. Types of spousal support.** The court may, after consideration of all factors set forth in subsection 5, award or modify spousal support for one or more of the following reasons.
A. General support may be awarded to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce.
(1) There is a rebuttable presumption that general support may not be awarded if the parties were married for less than 10 years as of the date of the filing of the action for divorce. There is also a rebuttable presumption that general support may not be awarded for a term exceeding 1/2 the length of the marriage if the parties were married for at least 10 years but not more than 20 years as of the date of the filing of the action for divorce.
(2) If the court finds that a spousal support award based upon a presumption established by this paragraph would be inequitable or unjust, that finding is sufficient to rebut the applicable presumption.

B. Transitional support may be awarded to provide for a spouse's transitional needs, including, but not limited to:
(1) Short-term needs resulting from financial dislocations associated with the dissolution of the marriage; or
(2) Reentry or advancement in the work force, including, but not limited to, physical or emotional rehabilitation services, vocational training and education.
. . .
*Id.*

3. Although Stephanie contends that she is entitled to an award of general support, the length of the marriage was eight years, and the trial court was not compelled to find that she overcame the presumption. *See* 19–A M.R.S.A. § 951–A(2).

4. Title 19–A M.R.S.A. § 951–A (5) provides as follows:
**5. Factors.** The court shall consider the following factors when determining an award of spousal support;
 A. The length of the marriage;
 B. The ability of each party to pay;
 C. The age of each party;
 D. The employment history and employment potential of each party;

[¶ 15] The court's transitional support award in this case is based partly on Stephanie's health issues, her desire to receive counseling, her need for dental work, her obligation to pay attorney fees, and her need for more education and training. Michael challenges the court's consideration of Stephanie's counseling and dental work and contends that these items are not "transitional needs." The spousal support statute, however, does not specifically define the limits of "transitional needs," but rather provides that transitional needs "includ[e] but [are] not limited to" two broad categories. 19–A M.R.S.A. § 951–A (2)(B). Moreover, in determining an award of alimony, the court is required to consider the factors listed in § 951–A (5), including the health of the parties. 19–A M.R.S.A. § 951–A (5)(I). Accordingly, the transitional alimony award based in part on Stephanie's need for counseling and dental work is well within the trial court's discretion. *See Noyes*, 662 A.2d at 922.

B. Spousal Support—Amount

[¶ 16] Michael also argues that the trial court's award of $60,000 for transitional spousal support was excessive and beyond its discretion, contending that the evidence supports a transitional award of no more than $27,700. We disagree.

[¶ 17] Stephanie has demonstrated a need for dental work, the need for legal representation in connection with this appeal, and that she will have to limit her work hours to accommodate her class schedule, and will be required to move to or commute to USM for two years. Furthermore, the statute provides that in determining an award of spousal support, the court must consider, among other factors, the income potential of the parties, their age, their standard of living, training and education, and their ability to pay spousal support. 19–A M.R.S.A. § 951–A(5). Contrary to Michael's contention, the transitional award of $60,000 was reasonable, was in keeping with the purpose of transitional support and well within the trial court's discretion. *See Noyes*, 662 A.2d at 922.

E. The income history and income potential of each party;

F. The education and training of each party;

G. The provisions for retirement and health insurance benefits of each party;

H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;

I. The health and disabilities of each party;

J. The tax consequences of a spousal support award;

K. The contributions of either party as homemaker;

L. The contributions of either party to the education or earning potential of the other party;

M. Economic misconduct by either party resulting in the diminution of marital property or income;

N. The standard of living of the parties during the marriage;

O. The ability of the party seeking support to become self-supporting within a reasonable period of time;

P. The effect of the following on a party's need for spousal support or a party's ability to pay spousal support:

(1) Actual or potential income from marital or nonmarital property awarded or set apart to each party as part of the court's distributive order pursuant to section 953; and

(2) Child support for the support of a minor child or children of the marriage pursuant to chapter 63; and

Q. Any other factors the court considers appropriate.

*Id.*

## II. STEPHANIE MURPHY'S CROSS–APPEAL

### A. Determination, Valuation, and Distribution of Marital Property

[¶ 18] Stephanie contends that the trial court erred in its determination, valuation, and division of the marital property. She argues that the court erred in its valuation of the marital home, that the IRA account in Michael's name was marital property, that the $30,000 previously in a joint account was marital property as well, and that the division of the marital property was not equitable.

### 1. The marital home in Hampden

[¶ 19] The trial court's valuation of marital property is reviewed for clear error. *Robinson v. Robinson*, 2000 ME 101, ¶ 12, 751 A.2d 457, 460. The Hampden property was valued at $119,300 in Michael's financial statement, there was expert testimony that the property would be listed at $119,000 to $125,000, and that the market was doing well, and some homes were selling at list price or higher. The court's valuation of the marital home at $119,300 was not clear error. *See Rob-*

*inson*, 2000 ME 101, ¶ 12, 751 A.2d at 460 (holding trial court's valuation of a business was not clearly erroneous because the court based its determination on an independent review of the evidence and the value was within the range provided by expert opinion).

### 2. Retirement account

[¶ 20] A trial court's determination of whether property owned by the parties is part of the marital estate or is nonmarital, is reviewed for clear error. *Doucette v. Washburn*, 2001 ME 38, ¶ 7, 766 A.2d 578, 581. Such a determination made by the trial court will not be disturbed if it is supported by competent evidence in the record. *Id.*

[¶ 21] Title 19–A M.R.S.A. § 953(2) (1998 & Supp.2002) defines "marital property" as "all property acquired by either spouse subsequent to the marriage" with five listed exceptions.[5] All property that is acquired during the marriage is presumed to be marital property, pursuant to 19–A M.R.S.A. § 953(3), but the presumption can be overcome by the applicability of one or more of the exceptions.[6] One such exception, the increase in value of property

---

**5.** Title 19–A M.R.S.A. § 953(2) provides as follows:

> **2. Definition.** For purposes of this section, "marital property" means all property acquired by either spouse subsequent to the marriage, except:
>
> A. Property acquired by gift, bequest, devise or descent;
>
> B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
>
> C. Property acquired by a spouse after a decree of legal separation;
>
> D. Property excluded by valid agreement of the parties; and
>
> E. The increase in value of property acquired prior to the marriage and the increase in value of a spouse's nonmarital property as defined in paragraphs A to D.
>
> (1) "Increase in value" includes:
>
> (a) Appreciation resulting from market forces; and

> (b) Appreciation resulting from reinvested income and capital gain unless either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property.
>
> (2) "Increase in value" does not include:
>
> (a) Appreciation resulting from the investment of marital funds or property in the nonmarital property;
>
> (b) Appreciation resulting from marital labor; and
>
> (c) Appreciation resulting from reinvested income and capital gain if either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property.
>
> *Id.*

**6.** Title 19–A M.R.S.A. § 953(3) provides as follows:

> **3. Acquired subsequent to marriage.** All property acquired by either spouse subsequent to the marriage and prior to a decree

that one spouse acquired prior to the marriage, contained in section 953(2)(E), was recently addressed in *Warner v. Warner*, 2002 ME 156, ¶¶ 27–35, 807 A.2d 607. In *Warner*, we explained the newly revised section 953(2)(E) as it related to one spouse's nonmarital stock as follows:

> Revised section 953(2)(E)(1)(a) establishes that to the extent a party demonstrates that the increase in value of a spouse's nonmarital stock resulted from "market forces," the increased value is nonmarital property regardless of whether the spouse or spouses played a substantial active role in managing the stock. In addition, sections 953(2)(E)(1)(b) and (2)(c) establish that to the extent a party demonstrates that the increase in value of a spouse's nonmarital stock resulted from reinvested income and capital gain, the increased value is nonmarital property unless it is also established that "either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property." 19–A M.R.S.A. 953(2)(E)(1)(b) & (2)(c) (Supp.2002).

*Warner*, 2002 ME 156, ¶ 31, 807 A.2d 607. Thus, the revised section 953(2)(E) makes clear that the increase of one spouse's nonmarital property that is attributable solely to market forces is also considered nonmarital property. *Id.* ¶ 27.

█ [¶ 22] Michael's retirement account is a rollover account from his ten years of employment in Massachusetts prior to the parties' marriage, and Michael testified that the account has not been added to since that time. The account remains in Michael's name alone. Stephanie did not contest that the account was a rollover account from Michael's previous employer in Massachusetts. She provided no documents showing that her name had ever been on the account, nor did she show that any marital funds or effort had been applied to the account. The court's finding that the IRA account was Michael's nonmarital property and was valued at $115,000 was not clear error. *See Doucette*, 2001 ME 38, ¶ 7, 766 A.2d at 581.

### 3. The $30,000 briefly held in a joint account

█ [¶ 23] Stephanie challenges the trial court's determination that a $30,000 account standing in Michael's name was nonmarital property. She contends that because it had been in a joint account, it is marital property. Although property acquired by one spouse during the marriage is presumed to be marital property, that presumption may be rebutted by showing that the property falls under one of the exclusions listed in section 953(2), which includes property acquired by gift, bequest, or descent. 19–A M.R.S.A. § 953(2), (2)(A) & (3).

[¶ 24] In *Chamberlin v. Chamberlin*, 2001 ME 167, 785 A.2d 1247, we upheld the trial court's determination that the plaintiff's property remained nonmarital even though it passed through the parties' joint checking account. The plaintiff's father had died and left the plaintiff an inheritance, which included $50,000 that was briefly placed in the parties' joint checking account before the plaintiff placed the funds in various investments in her own name. *Id.* ¶ 7, 785 A.2d at 1250. The plaintiff testified that she and the defendant had previously agreed that $50,000 of the inheritance was strictly her

---

of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

*Id.*

property. *Id.* In upholding the trial court's determination that the funds were nonmarital, we stated that "[i]n contrast to our holding in *Long* [*v. Long*, 1997 ME 171, ¶¶ 16–18, 697 A.2d 1317, 1323–24], we have never held that deposit accounts are subject to such automatic treatment as marital assets when funds are placed briefly in accounts, and we decline to do so now." [7] *Id.* ¶ 6, 785 A.2d at 1249.

[¶ 25] After his mother's death, Michael placed $30,000 of a $43,000 joint account he held with his mother, into a joint account with Stephanie, for a brief period of time, but with the understanding that this money would be used for paying taxes of his mother's estate. Stephanie never accessed any of the funds from this account, which is now in Michael's name. Section 953(2)(A) excludes property acquired after a marriage by descent from being classified as marital property. 19–A M.R.S.A. § 953(2)(A). Contrary to Stephanie's contention, *Long* does not require that the $30,000 be considered marital property. The trial court's determination that inherited money briefly placed in a joint account remains nonmarital property is not clear error. *Chamberlin*, 2001 ME 167, ¶¶ 5–7, 785 A.2d at 1249–50.

4. The division of the marital property

[¶ 26] Stephanie challenges the trial court's division of the martial property.

Following the court's initial division of the marital property, it ordered Michael to pay $50,000 to Stephanie to make the distribution more equitable.

[¶ 27] Trial courts have broad discretion when dividing marital property, and we review the court's action for an abuse of discretion. *Robinson*, 2000 ME 101, ¶ 9, 751 A.2d at 459. Title 19–A M.R.S.A. § 953(1) provides that in a divorce action, "the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors." [8] The statute provides for a just distribution, which "is not synonymous with an equal distribution. . . . [w]e have made it clear that a court is not required to divide the marital property equally, but is required to make the division fair and just considering all of the circumstances of the parties." *Doucette*, 2001 ME 38, ¶ 24, 766 A.2d 578, 586.

[¶ 28] Stephanie argues that she should be awarded more marital property because of her contributions to the home over the course of their relationship and because Michael has nonmarital property. The trial court, however, considered the factors set out in section 953 in dividing the property and required Michael to pay Stephanie $50,000. The division of marital prop-

---

**7.** In *Long,* the defendant placed $35,000 that he realized from the sale of his nonmarital property in a joint savings account, and then invested that money in property in Maine that he owned in joint tenancy with his wife. 1997 ME 171, ¶ 2, 697 A.2d at 1319. We refused to apply the source of funds rule and held that real estate owned jointly by spouses was marital property regardless of who supplied the purchasing funds. *Id.* ¶¶ 16–18, 697 A.2d at 1323–24.

**8.** Title 19–A M.R.S.A. § 953(1) (1998) provides that the court must consider all relevant factors, which include the following:

A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
B. The value of the property set apart to each spouse; and
C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable periods to the spouse having custody of the children.

*Id.*

erty was within the trial court's discretion. *Robinson*, 2000 ME 101, ¶ 9, 751 A.2d at 459.

## C. Attorney fees

[¶ 29] Attorney fees awards in divorce actions are reviewed by this Court only for an abuse of discretion. *Warner*, 2002 ME 156, ¶ 54, 807 A.2d 607. Title 19–A M.R.S.A. § 952(3) (1998) provides that "[w]hen making a final decree, the court may order a party to pay reasonable attorney[ ] fees. Attorney[ ] fees awarded in the nature of support may be payable immediately or in installments." *Id.* This Court has previously recognized that the legislature has given trial courts broad discretion in determining whether or not to award attorney fees to a party in a divorce action. *Rosen v. Rosen*, 651 A.2d 335, 336 (Me.1994).

[¶ 30] The trial court based its $60,000 transitional support award to Stephanie in part on her need to pay her divorce attorney. The court declined to directly award either party counsel fees, and determined that the parties should be responsible for their own attorney fees. Stephanie argues that Michael is in a better financial position and is more able to pay attorney fees. In *Rosen*, we said the parties' financial position is not the only factor to consider in determining an award of attorney fees. *Rosen*, 651 A.2d at 336–37. Rather, all relevant factors must be considered to reach a fair and just award. *Id.* at 336. As the trial court considered Stephanie's need to pay her attorney in awarding her transitional spousal support, the court did not abuse its discretion by failing to award her attorney fees directly.

The entry is:

Judgment affirmed.