2004 ME 69

**Deborah L. SPOONER**

v.

**Stephen A. SPOONER.**

Supreme Judicial Court of Maine.

Argued: March 10, 2004.
Decided: May 21, 2004.
Revised May 28, 2004.

---

Robert A. Laskoff, Esq. (orally), Laskoff & Associates, Lewiston, for plaintiff.

Paul F. Macri, Esq. (orally), David W. Grund, Esq., Berman & Simmons, P.A., Lewiston.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Stephen A. Spooner appeals from the divorce judgment entered in the District Court (Lewiston, *Daigle, J.*), which determined that an investment account containing shares of stock was the non-marital property of Deborah L. Spooner. Stephen contends that the stock in the account is marital property because (1) it was received from Deborah's mother's trust during the marriage; (2) Deborah's mother had intended the stock to be transferred to Deborah and Stephen jointly; (3) it was placed and remained in a joint account; and (4) a substantial amount of its proceeds were used for marital debts and purchases. Deborah argues that the stock in the account is her nonmarital property because it was a gift from her deceased mother and because Deborah never intended, by placing the stock in a joint account, to make it marital. We agree with Deborah that the stock was a gift to her alone. Because we conclude today

that there is a presumption that the joint account is marital property, and because Deborah failed to rebut that presumption by clear and convincing evidence, we vacate the judgment.

## I. PROCEDURE AND BACKGROUND

[¶ 2] Stephen and Deborah were married in 1988, and Deborah filed a complaint for divorce in 2001. No children were born of the marriage. The divorce hearing was held on August 29, 2002. The court issued a judgment distributing various items of marital property, including real estate, motor vehicles, and pension accounts, and naming the party responsible for the various items of marital debt. The court awarded Stephen marital property valued at $123,783 and ordered him to pay debts of $15,489. Deborah was awarded marital property valued at $97,433 and ordered to pay debts of $18,260. In addition, the court ordered Stephen to pay Deborah $14,560.50 to "equalize" the distribution of marital property.[1] This resulted in both parties realizing a net distribution of the marital estate of $93,733.50.

[¶ 3] The court further determined that a brokerage account containing assets of approximately $60,000 was Deborah's nonmarital property and set it apart to her.[2] Stephen appealed, and the sole issue on appeal is the court's decision that the brokerage account is Deborah's nonmarital property. The court did not make findings of fact, and none were requested.

[¶ 4] The brokerage account was opened in 1997. The title on the account is "Deborah L. Spooner and Stephen Spooner JT/WROS." "JT/WROS" is a common acro-

nym for "joint tenancy with rights of survivorship." A second joint account was opened at the same time with Stephen's name listed first. Beginning in 1997, for each of three years, Deborah's mother transferred stock valued at $10,000 into each account from her trust. The proceeds of both accounts were fully expended by the parties for marital debts, but the accounts remained open.

[¶ 5] Deborah's mother died in 1999, and in June 2000, Deborah received shares of stock valued at approximately $150,000 from her mother's trust. Deborah, as one of the trustees of her mother's trust, transferred her share of the trust stock into the joint brokerage account that had Deborah's name listed first. Deborah testified that her reason for putting the stock into the joint account was because she thought that an account in one person's name would be in limbo if the person died. She also testified that she considered the account to be hers.

[¶ 6] At the time of the divorce hearing, stock valued at approximately $60,000 remained in the joint brokerage account. Approximately $30,000 to $40,000 of the stock value had been spent to pay off Deborah's and Stephen's credit card debt. They both had credit cards in their own names, and they had accumulated substantial balances. Funds from the account were used also for down payments on vehicles for both Stephen and Deborah, repayment of a car loan, Deborah's dental work, and repayment of a college loan for Deborah's son. Market forces also contributed to the reduction of the account value.

---

**1.** The court did not state its reasons for concluding that an equal distribution was an equitable distribution.

**2.** There were actually three accounts, and the court set aside all three accounts to Deborah.

One contained no assets, and the second had $140 in it. Only the characterization of the account with approximately $60,000 is at issue on appeal.

## II. DISCUSSION

### A. Standard of Review

[¶ 7] The determination as to whether property is marital or nonmarital is a question of fact. *See, e.g., Murphy v. Murphy*, 2003 ME 17, ¶ 20, 816 A.2d 814, 820. We review questions of fact for clear error. However, the determination of the law that is applied to the facts is reviewed de novo. Thus, when we are called upon to determine whether the source of funds rule, the transmutation doctrine, or other rule should be utilized in deciding whether property is marital or nonmarital, we do so de novo without deferring to the trial court's view of the law but honoring the trial court's finding of the facts as long as they are supported by the evidence. *See, e.g., Long v. Long*, 1997 ME 171, ¶¶ 4–18, 697 A.2d 1317, 1320–24.

### B. Gift

[¶ 8] The shares of stock in the contested account were acquired during the marriage and, therefore, are presumed to be marital property. *See* 19–A M.R.S.A. § 953(3) (1998). This statutory presumption is overcome if the party claiming the nonmarital status of the property demonstrates that the property is one of the exceptions set forth in 19–A M.R.S.A. § 953(2). Property acquired by "gift, bequest, devise or descent" is nonmarital. *Id.* § 953(2)(A).

[¶ 9] The parties agree that the shares of stock in the brokerage account were acquired by gift. Their disagreement is whether the gift was to Deborah solely or to Deborah and Stephen jointly. Stephen argues that the stock in the account is marital because it came to the parties jointly as a gift, just as the earlier inter vivos gifts of stock were made jointly to the parties by Deborah's mother. Deborah counters that the stock transferred to the brokerage account from the trust after her mother's death came to her solely as a gift as shown by the trust document in which she, and not Stephen, was a beneficiary.

[¶ 10] Stephen argues that this case is similar to *Lee v. Lee*, 595 A.2d 408 (Me. 1991), in which the wife's father caused land to be conveyed from his trust to the parties jointly, and we held that because the wife had not shown that her father intended that the gift was not to the marital estate, it was marital. *Id.* at 411. In this case, unlike *Lee*, Deborah has shown that the gift was made to her and not to her and her husband jointly. The trust document naming Deborah, and not Stephen, as a beneficiary demonstrates that the stock was intended to go to Deborah solely, and not to the parties jointly. The trust document provided that the trust property, not otherwise distributed, was to be divided into equal shares for the settlor's living children and the descendants of any deceased children. Deborah, as one of the living children, was a beneficiary of the trust, and the stock distributed to her was her equal share of the remaining trust property. Stephen was not mentioned in the trust document, and the distributed stock was not intended to go to him.

[¶ 11] In summary, Deborah initially met her burden of rebutting the statutory presumption that the property acquired during marriage was marital by proving that it was a gift to her alone.

### C. Placement of the Gift into a Joint Account

[¶ 12] Stephen argues, however, that Deborah's placement of the stock in the parties' joint account and the parties' use of the account to pay marital debts evidenced Deborah's intent to transfer the stock to the marital estate. We have not previously decided whether shares of stock

received as a gift by one spouse and then transferred into the joint ownership of both spouses becomes, as a matter of law, marital property. If the gift to Deborah had been real estate instead of stock, and she had deeded the real estate to herself and Stephen jointly, the rule established in *Long*, 1997 ME 171, 697 A.2d 1317, would dictate that the property is marital. *Id.* ¶ 1, 697 A.2d at 1319. We have not extended the holding in *Long* to non-real estate property, but neither have we rejected it. This case requires us to determine whether we will apply the source of funds rule, which we have applied when assets are held in an account in one party's name, or whether we will extend the holding in *Long* to assets in a joint account.

### D. Precedent Characterizing Real Estate Held in Joint Tenancy

[¶ 13] To determine which rule is appropriate, we examine the rules that we have applied in the past for determining marital and nonmarital property. Most of the cases have involved real estate. In *Tibbetts v. Tibbetts*, 406 A.2d 70 (Me.1979), we adopted the source of funds rule for real estate in joint tenancy acquired after marriage with funds that came, at least in part, from one spouse's separate property. *Id.* at 75. The source of funds rule traces the contribution of funds and sets apart, as nonmarital property, a portion of property in joint tenancy in proportion to the contribution of the nonmarital funds to the acquisition of the property.

[¶ 14] In *Carter v. Carter*, 419 A.2d 1018 (Me.1980), we adopted the transmutation doctrine and said that when one spouse transferred title of real estate from sole ownership into joint ownership with the spouse, the transfer evidenced the spouse's intent to gift the property to the marital estate. *Id.* at 1022. *Carter* established a presumption that real estate transferred into joint tenancy was marital, and the presumption could be rebutted by clear and convincing evidence that it was not the transferring spouse's intent to place the property in the marital estate. We rejected the husband's argument that the transfer evidenced an intent to avoid probate rather than an intent to give the property to the marital estate.[3]

[¶ 15] In *Lalime v. Lalime*, 629 A.2d 59, 60–61 (Me.1993) and *Weeks v. Weeks*, 650 A.2d 945, 947 (Me.1994), we applied *Carter* to real estate originally owned by the husbands but placed in joint tenancy for the purpose of obtaining a loan. We said that such a purpose was not evidence that they did not intend to transfer the property to the marital estate. The husbands explained their reasons for the transfers, but they did not deny the transfers. We further noted that "retrospective statements of intention offered at the time of divorce to defeat the other spouse's interest are highly suspect." *Lalime*, 629 A.2d at 61 (quoting *Carter*, 419 A.2d at 1021–22 n. 3). *Lalime* and *Weeks* clarified the dicta in *Carter* that to overcome the presumption of donative intent, the transferring spouse had to prove by clear and convincing evidence that the spouse did not intend to transfer ownership or the transfer was induced by fraud, coercion, duress, or deception. *Lalime*, 629 A.2d at 61 n. 1; *Weeks*, 650 A.2d at 947.

---

**3.** In *Carter*, we looked to a decision of the Missouri Court of Appeals in *Conrad v. Bowers*, 533 S.W.2d 614 (Mo.Ct.App.1975) because the Missouri statute was identical to our statute. Missouri has continued to apply the transmutation doctrine and holds that when a spouse places separate property into the joint names of both spouses, there is a presumption that the transferred property is marital property. *Montgomery v. Montgomery*, 18 S.W.3d 121, 124 (Mo.Ct.App.2000). In Missouri, the doctrine applies to financial accounts and other property held jointly as well as to real estate. *Id.*

■■ [¶ 16] In *Long*, we applied the transmutation doctrine from *Carter* and *Lalime*, *Long*, 1997 ME 171, ¶¶ 5, 15–18, 697 A.2d at 1320, 1323–24. We held that when real estate owned by one spouse before the marriage was placed into joint title by that spouse, the real estate was marital, and the motivation of the spouse in transferring title was irrelevant. "[R]eal property acquired jointly during marriage, whether transferred from a spouse or a third party, becomes a part of the marital estate." *Id.* ¶ 15, 697 A.2d at 1323. We held that the concept of the joint enterprise of marriage, as embodied in the statutes, required recognition of the "legal significance of joint ownership." *Id.* ¶ 17, 697 A.2d at 1324. We stated: "A deed in joint tenancy creates present ownership rights that are capable of immediate transfer. It is incongruous to conclude that such an outright transfer of ownership to a spouse fails to create divisible marital property in the event of divorce." *Id.* ¶ 16, 697 A.2d at 1323. We added that under the *Long* rule we were advancing "the statutory purpose of subjecting shared assets to the court's equitable powers of division." *Id.* ¶ 17, 697 A.2d at 1324. We expressly overruled *Tibbetts* and the line of cases that treated "jointly owned real property as separate property." *Id.* ¶ 16, 697 A.2d at 1324.

[¶ 17] In *Long*, we noted the inconsistent treatment that had been given in our past decisions to jointly-owned property. *Id.* ¶ 15, 697 A.2d at 1323. *Long*, however, is not without its own ambiguity. It is possible to interpret the rule in *Long* as an absolute one: if real estate is jointly owned, it is marital. This is because of the statement in *Long* that the inconsistency in prior cases "resulted from focusing on the presumed intent of the parties rather than the objective facts of joint ownership," and the statement that the "motivation" for transferring the property into

joint tenancy "is irrelevant." *Id.*, 697 A.2d at 1323. These two statements in *Long* appear to disavow any *presumption*. However, the latter sentence is followed by a citation to *Carter*, *Lalime*, and *Weeks*, with a footnote stating that the presumption that the property is marital could be overcome only with clear and convincing evidence "that the transferring spouse did not intend to transfer the property to joint ownership or was induced to do so by fraud, coercion, duress, or deception." *Id.* ¶ 15 n. 3, 697 A.2d at 1323.

[¶ 18] We now explain *Long* to mean that when real estate is held in joint tenancy there is a presumption that it is marital. The presumption is rebuttable but on very narrow grounds. The presumption can be rebutted only if the spouse did not intend to transfer the property to joint ownership or the spouse was induced by fraud, coercion, duress, or deception. Furthermore, the presumption can be rebutted only with clear and convincing evidence. The presumption of donative intent in *Carter*, *Lalime*, and *Weeks* is not applicable after *Long*. The presumption from *Long* is that the property is presumed marital.

## E. Precedent Characterizing Non–Real Estate Assets

[¶ 19] We have applied the source of funds rule to stocks, bonds, and bank and investment accounts, when those assets are held in the name of only one spouse. In a pre-*Long* case, we applied the source of funds rule to the appreciation of a business that the husband and his brother had acquired during the marriage by a gift from their father. *Macdonald v. Macdonald*, 532 A.2d 1046, 1049–50 (Me.1987). In two post-*Long* cases, we cited to *Long* but recognized that it was not applicable because the financial accounts in those cases were not jointly owned with the spouse. *Harriman v. Harriman*, 1998

ME 108, ¶ 8, 710 A.2d 923, 924; *Clum v. Graves*, 1999 ME 77, ¶ 10 n. 8, 729 A.2d 900, 905. Likewise, the *Long* presumption was not at issue in the most recent case involving the characterization of stocks, *Warner v. Warner*, 2002 ME 156, 807 A.2d 607, where the husband's stocks were held solely in his name, *id.* ¶ 4, 807 A.2d at 610.

[¶ 20] There are two post-*Long* decisions involving non-real estate assets acquired after marriage and placed in joint accounts. In *Murphy*, 2003 ME 17, ¶¶ 17, 25, 816 A.2d at 819, 822, and *Chamberlin v. Chamberlin*, 2001 ME 167, ¶ 7, 785 A.2d 1247, 1250, we held that monies received from inheritances did not lose their character as nonmarital by being placed, for a brief period of time, in a joint account before being transferred to an account solely in the name of the spouse who had originally received the property.

[¶ 21] Deborah argues that our decisions in *Murphy* and *Chamberlin* determined that the source of funds rule is applicable to assets held in a joint account. However, we did not examine whether we should apply the concepts of *Long* to non-real estate assets held jointly. Without articulating our reasons, we simply said that the holding in *Long* did not require us to consider money briefly held in a joint account as marital. *Chamberlin*, 2001 ME 167, ¶ 6, 785 A.2d at 1249. We did not have to confront the question of whether we would apply *Long* in a situation where the assets were held jointly for more than a brief initial period.

[¶ 22] Furthermore, the result in *Chamberlin* would not have differed if the *Long* rule had been applied. There, the parties had an agreement that the wife's inheri-

tance was solely for her. *Id.* ¶ 7, 785 A.2d at 1250. Thus, the presumption of marital property was overcome by the parties' agreement. *See* 19-A M.R.S.A. § 953(2)(D), (3). The fact that the money remained in the account for a short period of time before the wife established separate accounts for herself and her children corroborated the agreement.

[¶ 23] Similarly, the application of *Long* to *Murphy* might not have changed the result. In *Murphy*, the husband had placed a portion of his inheritance into a joint checking account for the purpose of paying estate taxes. *Murphy*, 2003 ME 17, ¶ 25, 816 A.2d at 822. If we had applied *Long*, the husband's motivation for placing the money in a joint account would have been unimportant; the salient issue would have been whether he intended to place the asset into joint ownership. The fact that the account was of "brief" duration, *id.*, 816 A.2d at 822, would have been relevant to determine his intent. Moreover, the Court referred to an "understanding." *Id.*, 816 A.2d at 822. This may have been an agreement between the parties, similar to that in *Chamberlin*, in which case the presumption of marital property would have been rebutted.

F. The Appropriate Rule for Asset Accounts Held in Joint Names

[¶ 24] In deciding whether to apply the rule in *Long* or the source of funds rule to the joint asset account at issue in this case,[4] we should ascertain which rule will best implement the statutory purposes for distinguishing between marital and nonmarital property, and we should consider

---

4. We could consider a third rule, that is, the presumption of donative intent as in *Carter*. However, we noted in *Long* that presuming intent has led to inconsistency in our decisions. *Long*, 1997 ME 171, ¶ 15, 697 A.2d 1317, 1323. Furthermore, because we rejected the presumption of donative intent for real estate held jointly, we can think of no reason why we should revitalize it for non-real estate property.

whether there is a justification for treating real estate differently from asset accounts.

[¶ 25] We have recognized that the Legislature adopted the "shared enterprise or partnership theory" of marriage. *Long*, 1997 ME 171, ¶ 7, 697 A.2d at 1320. When a person, engaged in a shared enterprise with another, transfers property into an account held jointly with the other, it is reasonable to consider that the two members of the joint enterprise own the property together. In *Long* we said, "The purpose of [19-A M.R.S.A. § 953] is enhanced by recognizing that real property acquired jointly during marriage, whether transferred from a spouse or a third party, becomes a part of the marital estate." *Long*, 1997 ME 171, ¶ 15, 697 A.2d at 1323. Marriage is a joint enterprise that is strengthened by treating the property that spouses have placed in joint tenancy as marital.

[¶ 26] The concept of the joint enterprise of marriage is largely ignored by the source of funds rule except when marital effort is the source of the funds. The source of funds rule does not comport with the actual behavior of a married couple. As in this case, marital partners generally treat the assets in a joint account as marital property, expending the proceeds of the assets for marital items.

 [¶ 27] The presumption of marital property does not detract from the statutory recognition of separate property. Spouses who intend to keep their inherited stock portfolio separate from the marital estate will not keep it in a joint account. Likewise, it does not diminish the responsibility of a court to make an equitable division of the martial property. Courts are required to consider the contribution of each spouse to the marital estate as well as the financial circumstances of the parties. 19-A M.R.S.A. § 953(1)(A), (C). Although the court in this case strove to make the division of marital property equal, as shown by its requirement that Stephen pay a sum to Deborah to equalize the marital distribution, we recognize that an equal division is not necessarily an equitable one. *Doucette v. Washburn*, 2001 ME 38, ¶ 24, 766 A.2d 578, 586. Where one party's formerly separate property is transferred to the marital estate, an equitable division may involve awarding that spouse a larger share of the marital property.

[¶ 28] In deciding which rule to apply to non-real estate assets, we also consider whether there are significant differences between real estate that is jointly held and assets held in a joint financial account. We recognize that there may be more documents involved in a real estate transfer than in the establishment of a joint asset account. However, the account in this case has sufficient documentation to show that it is joint. The point made in *Long* that "joint tenancy creates present ownership rights that are capable of immediate transfer," *Long*, 1997 ME 171, ¶ 16, 697 A.2d at 1323, applies equally to the asset account in this case. We are unable to discern a good reason for applying the source of funds rule to non-real estate joint accounts while applying the *Long* rule to real estate held in joint tenancy.

 [¶ 29] In summary, we conclude that the rule in *Long* better comports with the purposes of the Maine statute distinguishing between marital and nonmarital property. The presumption of marital property recognizes the joint enterprise of marriage and carries out the parties' expectations. Finally, the same rule ought to apply to both real estate held in joint tenancy and asset accounts held jointly. Thus, we hold that when the parties own property in a documented form of joint ownership, such as a brokerage account, as in this case, the account, with its

assets, is presumed to be marital property, even though the assets were separately owned by one of the parties prior to placement in the joint account. This presumption that the property is marital can be overcome if the party seeking to have the property declared nonmarital proves, by clear and convincing evidence, that it was not that party's intent to place or transfer the assets into an account in joint ownership or that the party was induced to do so by fraud, coercion, duress, or deception.

G. Application of *Long*

[¶ 30] Applying the *Long* presumption of marital property to the disputed account in this case, the shares of stock in the account are marital because they are in an account held in the joint names of the parties, unless Deborah proved by clear and convincing evidence that she did not intend to transfer the property to joint ownership.[5] Our standard of review when the burden of proof is clear and convincing evidence is whether the fact-finder reasonably could have been persuaded that the required findings were proved to be highly probable. *In re Serena C.*, 650 A.2d 1343, 1344 (Me.1994).

[¶ 31] The undisputed evidence is that Deborah placed the shares of stock from her mother's trust into the joint account. The shares remained in the account for more than a brief period of time.

[¶ 32] Deborah testified that she placed the stock in the joint account because she did not want it to go into limbo if she died. Her reason evidences her intentional decision to place the stock in joint ownership. As in *Weeks* and *Lalime*, Deborah's statement only gives her reason for placing the stocks in joint ownership and is not a denial of her action. *Weeks*, 650 A.2d at 947; *Lalime*, 629 A.2d at 61.

[¶ 33] Our standard of review requires us to determine from these facts whether the trial court reasonably could have been persuaded that Deborah proved that it was highly probable that she did not intend to transfer the stock to joint ownership. We conclude that there is no evidence from which the court could have concluded it was highly probable that she did not intend to place the stocks in joint ownership.

[¶ 34] In summary, Deborah overcame the statutory presumption that the brokerage account was marital. Although the stock in the account was acquired during the marriage, *see* 19–A M.R.S.A. § 953(2), she proved that it was a gift to her solely, *see* 19–A M.R.S.A. § 953(2)(A). However, she placed the stock into a joint account, and it remained in a joint account for more than a brief duration. Therefore, a presumption arose that the stock was marital property. Deborah failed to prove by clear and convincing evidence that she did not intend to place the stock in joint ownership and, therefore, failed to rebut the presumption. Because we are vacating the court's determination that the brokerage account was Deborah's separate property, which was the only substantial item of nonmarital property, on remand, the District Court will have to determine anew the equitable distribution of the marital estate.

The entry is:

Judgment vacated. Case remanded to the District Court for further proceedings consistent with this opinion.

---

5. Deborah has not suggested that Stephen induced her to place the stocks in a joint account through fraud, coercion, duress, or deception.