MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 3
Docket:        Han-12-535
Argued:        November 19, 2013
Decided:       January 14, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR,
               JJ.


LISA LESKO

v.

THEODORE STANISLAW


GORMAN, J.

[¶1]  Theodore Stanislaw appeals from a divorce judgment entered in the District Court (Ellsworth, *Mallonee, J.*) dividing the parties' marital property. He contends that the court failed to make requisite findings concerning his financial misconduct to support its judgment; that it erred when it considered his criminal conduct for purposes of dividing the property; and that its division of the marital property was inequitable.  Because the court was required to consider the economic circumstances of each spouse at the time of the property division, and because this analysis necessarily involves consideration of a party's criminal conduct if that conduct affects the household finances, we conclude that the court acted within the bounds of its discretion in ordering a division of marital property

2

that reflected the financial impact of Stanislaw's criminal conduct on the marital estate. We affirm the judgment.

## I. BACKGROUND

[¶2] Lisa Lesko and Theodore Stanislaw were married in New York on June 27, 1992, and have a son, born in 2002. Lesko is a family physician in Blue Hill. Stanislaw, who has a bachelor's degree in music education, served as a homemaker for much of the marriage, earning income on a part-time basis as a dog trainer, piano teacher, and voice instructor. In November 2008, Stanislaw was arrested and indicted for multiple counts of sexual abuse of girls who had been his piano students. He was convicted and began serving his sentence in early 2010.[1]

[¶3] Lesko filed for divorce on November 1, 2010. Because Stanislaw was precluded from having contact with the parties' son as a result of his criminal convictions, there was no evidence presented on the issues of parental rights or responsibilities during the two-day hearing held on May 15 and July 19, 2012. The court primarily received evidence concerning matters related to the division of the marital estate. The parties testified about the assets they accumulated during the marriage, including real estate, personal property, retirement and bank accounts, and life insurance accounts. At the time of the trial, the marital residence in Blue

---

[1] The criminal matter is still pending, as Stanislaw faces a third sentencing hearing.

Hill, which had been transferred by the parties solely to Lesko sometime after Stanislaw's arrest, had been placed by her into a trust for the benefit of their son. Despite this technical issue concerning ownership, the parties agreed that Lesko would be awarded the real property, but disagreed as to how the debts associated with the property should be divided. Both parties had taken out loans against their life insurance policies to pay down the debt on the residence, and they could not agree about the disposition of responsibility for these loans.

[¶4] During the trial, and over Stanislaw's objections, Lesko presented evidence that was intended to demonstrate the effect of Stanislaw's criminal behavior on the family's finances. She testified that some of Stanislaw's victims were patients of hers and that she lost approximately fifteen children as patients. She also testified that she had paid the substantial legal fees Stanislaw incurred. In addition, because Stanislaw was required to live separately from the family and because he has not worked at all since his arrest, Lesko's wages—the only source of support for this family—had to cover the expenses he incurred while living separately from their son. Finally, at no time since his 2008 arrest has Stanislaw provided either childcare for their son or any household assistance, as he had historically done.

[¶5] On August 29, 2012, the court issued a "Memorandum of Decision" granting the parties a divorce on the ground of irreconcilable marital differences.

Included in that decision were findings that Stanislaw's criminal conduct "resulted in expenditure of tens of thousands of dollars in legal fees, followed by lengthy incarceration during which he [could not] work or generate income" and "resulted in diminished income" for Lesko's practice. Based on these findings, the court concluded that Stanislaw's conduct constituted financial misconduct. The court also stated that, even if Stanislaw's actions did not constitute financial misconduct, his actions and the consequences of those actions were relevant factors to be considered in the division of marital property pursuant to 19-A M.R.S. § 953(1) (2013).

[¶6] In its August 29 decision, the court divided the parties' property and directed Lesko's counsel to "prepare a judgment in accordance with the terms of this decision." On September 10, 2012, Stanislaw filed a motion pursuant to M.R. Civ. P. 52(a) and (b) for additional findings and conclusions, and to alter or amend the court's findings and conclusions pertaining to financial misconduct and its treatment of debt incurred against the parties' respective life insurance policies. Lesko filed an objection to this motion.

[¶7] On October 4, 2012, the court issued a divorce judgment that divided the parties' property as it had in its August 29 decision, and assigned values and debts to the property as follows:

|  | Assignment to Lesko | Assignment to Stanislaw |
|---|---|---|
| **Real Property** | | |
| Blue Hill residence | $623,000.00 | |
| Real estate mortgage | ($239,037.64) | |
| Home equity loan | ($15,854.36) | |
| Vermont condominium | | $148,000.00 |
| | | |
| **Retirement Accounts** | | |
| Lincoln Financial Group | $104,524.67 | |
| Fidelity | $122,533.40 | |
| | | |
| **Life Insurance Accounts** | | |
| Northwestern Mutual policies[2] | $40,024.32 | $52,612.32 |
| | | |
| **Vehicles** | | |
| Subaru | $11,815.00 | |
| | | |
| **Bank and Investment Accounts** | | |
| Bar Harbor Bank & Trust account | $14,911.81 | |
| Bar Harbor Bank & Trust "condo account" | | $1,027.06 |
| Stifel Nicolaus investment account | | $44,665.29 |
| Bangor Savings Bank account | | $218.88 |
| **TOTAL** | **$670,717.20** | **$246,523.55** |
| **% of Total Marital Estate** | **73%** | **27%** |

[¶8]  Eleven days later, the court denied Stanislaw's motion to alter or amend and responded to his request for additional findings by stating that, "[r]egardless of whether Defendant's conduct was 'economic misconduct,' it could validly be taken into account under 19-A [M.R.S.] § 953(1)." The court also stated that it could not overlook the "enormous economic impact" that Stanislaw's

---

[2]  These figures represent the cash surrender values of the parties' Northwestern Mutual policies. Lesko's policy was valued at $96,331.60, less a $47,507.28 loan balance; and Stanislaw's policy was valued at $218,758.45, less a $166,146.13 debt.

6

conduct had on the parties. It further stressed that, given the impossibility of a precise assessment of the effect Stanislaw's actions had on the marital estate, the court's division of property sought overall equity and its treatment of the life insurance policy debts "does not affect this overall assessment." Stanislaw timely appealed pursuant to 19-A M.R.S. § 104 (2013) and M.R. App. P. 2.

## II. DISCUSSION

[¶9] We consider whether, in the property disposition, the trial court: (A) failed to make the findings necessary to support its judgment; (B) erred as a matter of law in considering Stanislaw's criminal conduct as a relevant factor in the property division; or (C) inequitably divided the property.

A. Necessary Findings to Support Judgment

[¶10] Stanislaw contends that the trial court failed to explain the causal connection between its findings of financial misconduct and its division of the marital estate. A trial court "has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Peters v. Peters*, 1997 ME 134, ¶ 10, 697 A.2d 1254 (citations omitted). However, a court is not required to detail its rationale as to every finding of fact or conclusion of law. *See Miele v. Miele,* 2003 ME 113, ¶ 11, 832 A.2d 760.

[¶11]   In this case, the court made express findings about the family's expenditure of substantial legal fees on Stanislaw's behalf and about his victimization of Lesko's patients, noting that the latter directly resulted in diminished income from Lesko's practice.  It also found that Lesko suffered not only financial losses arising from the loss of patients who left her family practice after Stanislaw's criminal conduct came to light, but that she suffered the loss of a financially contributing co-parent.  The court explained that, although the only quantifiable elements of financial loss were the legal fees incurred in Stanislaw's criminal defense, the court had taken into account Stanislaw's dismal earning potential during and following his incarceration in dividing the marital property.  Contrary to Stanislaw's assertion, the court provided findings sufficient to allow for effective appellate review.

B.     Criminal Conduct as a Relevant Factor in Marital Property Division

[¶12]  Stanislaw's main contention on appeal is that the court erred when it expressly considered his criminal conduct as a relevant factor in dividing the marital property.  He advances four grounds for his argument.  First, Stanislaw contends that the court exceeded its statutory authority by considering the consequences of his criminal conduct as a relevant factor in the property division. "We review a court's division of property and debts for an abuse of discretion." *Leary v. Leary*, 2007 ME 63, ¶ 9, 926 A.2d 186.  A court exceeds the bounds of its

8

discretion when it considers a factor prohibited by law. *See Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074. Although Maine's property disposition statute, 19-A M.R.S. § 953(1), enumerates three "relevant factors" that a court must consider in dividing marital property, the plain language of the statute makes clear that these factors are not exclusive.[3] Thus, courts may "give consideration to other matters peculiar to the case being heard in order that a 'just' result be obtained."[4] *Fournier v. Fournier*, 376 A.2d 100, 103 (Me. 1977). More specifically, although courts may not consider a party's criminal behavior to establish fault or marital misconduct, courts *must* consider the *financial* consequences of criminal conduct as relevant factors in the division of marital property. *See Hebert v. Hebert*, 475 A.2d 422, 424-25 (Me. 1984) (stating that a

---

[3] Title 19-A § 953(1) (2013) states:

**1. Disposition.** In a proceeding for a divorce, for legal separation or for disposition of property following dissolution of the marriage by a court that lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse the spouse's property and shall divide the marital property in proportions the court considers just after considering all relevant factors, including:

**A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

**B.** The value of the property set apart to each spouse; and

**C.** The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable periods to the spouse having custody of the children.

[4] In *Robinson v. Robinson*, 554 A.2d 1173, 1175 (Me. 1989), we identified several factors as not being legitimate considerations in the distribution of marital property; those factors, however, are not relevant here.

defendant's incarceration and attendant lack of living expenses formed his "present economic circumstances"—a consideration mandated by statute).

[¶13]  Here, the court methodically evaluated how Stanislaw's criminal conduct, convictions, and incarceration had and would continue to financially affect the household.  Specifically, the court found that (1) Stanislaw's criminal conduct resulted in the expenditure, from the marital estate, of "tens of thousands of dollars in legal fees"; (2) his conduct, particularly his victimization of some of Lesko's patients, caused Lesko to lose income through the loss of patients in her practice; (3) his lengthy incarceration, which will likely extend into their son's adulthood, would cause Lesko to suffer the loss of a financially contributing co-parent; (4) his incarceration would adversely affect his current and future earning potential; and (5) the specific nature of his criminal conduct would preclude him from doing many of the jobs for which he was qualified. Importantly, the court did not consider evidence of Stanislaw's criminal conduct for purposes of discerning moral fault and expressly excluded the introduction of sentencing transcripts, witness statements, and other materials bearing on the specific offenses for which Stanislaw was convicted, stating that this evidence "would be at best cumulative and at worst inflammatory."

[¶14]  Second, Stanislaw contends that the court erred as a matter of law when it characterized his use of marital funds for his criminal defense as a form of

10

financial misconduct. Invoking the criteria set forth in Levy, *Maine Family Law* § 7.7[3][d][ii] at 7-60 (8th ed., 2013), Stanislaw asserts that his use of marital funds to defend himself in court falls short of the type of conduct that constitutes financial misconduct.[5] Those criteria, however, are not meant to define financial misconduct; rather, they are suggested as a means to prevent evidence of marital misconduct from being used to subvert the legislative objective of fault-free divorce and to "minimize the use of the courtroom and, in particular, the process of dividing marital property, as a forum for the parties to vent their hostilities."[6] *Id.* We have never declared, and we decline to do so here, that courts are prohibited from considering the fiscal impact of a party's use of marital funds to pay legal expenses in determining a just division of marital property pursuant to section 953(1). Whether those fiscal impacts are characterized by a court as a form of "financial misconduct" is not material to the analysis.

[¶15] Third, Stanislaw contends that his expenditure of marital funds to fund his defense should not have been a factor in the division of property because

---

[5] Those criteria are whether the evidence of purported financial misconduct relates to conduct that (1) had a "direct adverse financial impact upon the marital estate;" (2) was an "unreasonable" rather than a "reasonable, yet unsuccessful" financial decision; and (3) was "truly probative of having had an adverse economic impact upon the marital estate." Levy, *Maine Family Law* § 7.7[3][d][ii] at 7-60 (8th ed., 2013).

[6] Those objectives have been satisfied here. The court took great pains to avoid turning the two-day hearing into a re-hashing of Stanislaw's criminal actions, emphasized in its October 15th order that it did not adopt Lesko's "adjectival descriptions" of Stanislaw's conduct, and expressly excluded evidence that delved into the details of Stanislaw's criminal conviction.

the court's consideration of that expenditure violated his constitutionally guaranteed right to representation by counsel.[7] However, "[t]he primary purpose of the effective assistance of counsel requirement is to ensure a fair trial." *Pineo v. State*, 2006 ME 119, ¶ 10, 908 A.2d 632. Nothing that the court did here infringed on Stanislaw's right to a fair trial, nor did the court punish Stanislaw for exercising his constitutional right to effective counsel.

[¶16] Fourth, Stanislaw asserts that the court erred in considering his criminal conduct because the actual and potential loss of Lesko's professional earnings arising from Stanislaw's conduct was not quantifiable. In so arguing, Stanislaw confuses two points: although a court must, as it did here, assign a value to each item of property subject to equitable distribution, *see Miliano v. Miliano*, 2012 ME 100, ¶¶ 25-26, 50 A.3d 534; *Shirley v. Shirley*, 482 A.2d 845, 849 (Me. 1984), the court is not required to assign a dollar amount to each *factor* it considers pursuant to section 953(1). Here, the court did not regard Lesko's business interests as marital property subject to distribution so as to necessitate its valuation. Rather, the court regarded the loss of Lesko's patients due to

---

[7] Contrary to Stanislaw's contention, we have not cautioned against considering constitutionally protected interests of a party in marital property division judgments; rather, we have said that courts "should endeavor to resolve the controversies before them without deciding constitutional issues, reaching such an issue only [if] it is entirely necessary to a decision on the cause in which it is raised." *Osier v. Osier,* 410 A.2d 1027, 1029 (Me. 1980) (quotation marks omitted). Accordingly, a court may take into account the constitutional rights of a party if the factual situation necessitates it, but then must do so by engaging in a "deliberate and articulated balancing of the conflicting interests involved" to ensure that the court's order "makes the least possible infringement" on that party's rights. *Id.* at 1030.

Stanislaw's criminal conduct as a relevant factor in arriving at a just division of the marital estate.

## C.     Equitable Division of the Marital Property

[¶17]   Finally, Stanislaw contends that the court's distribution order is inequitable because it awarded seventy-three percent of the marital property to Lesko and only twenty-seven percent to Stanislaw, and because it failed to honor the parties' intentions concerning the debt associated with Stanislaw's life insurance policies.  Section 953(1) instructs that the division of marital property be in such proportions as the trial court deems just.    19-A M.R.S. § 953(1). "Just proportions" does not necessarily dictate an equal allocation of property. *See, e.g., Robinson v. Robinson*, 554 A.2d 1173, 1176 (Me. 1989) (an equal allocation "carries no presumptive weight either in its favor or against it"). We have repeatedly held that a division "need not be equal, but it must be fair and just considering all of the parties' circumstances." *Leary*, 2007 ME 63, ¶ 9, 926 A.2d 186  (citations omitted).    We will not disturb a court's property distribution "if there is competent evidence in the record to support it." *Doucette v. Washburn*, 2001 ME 38, ¶ 7, 766 A.2d 578.

[¶18]   In this case, the court followed best practice in its judgment by providing "a justification for the total award to each party" in light of the factors it considered pursuant to section 953(1).  *Brown v. Habrle,* 2008 ME 17, ¶ 15,

940 A.2d 1091. The court identified all of its considerations in reaching a just division of the property, including (1) the effect of Stanislaw's criminal conduct on the marital finances and his dismal earning potential while the parties' child is still a minor in need of support, as already explained; (2) nonmarital components of the parties' life insurance policies and the Blue Hill house; (3) ongoing private school and tutoring fees for the parties' son that Lesko will continue to incur; (4) Stanislaw's substantial services to the household as homemaker and parent; and (5) the diminution of Lesko's income due to other factors.

[¶19]  The court was not required to give "piecemeal explanations of the division of equity in individual pieces of property." *Id.* Recognizing that its division of property "sought overall equity," the court stated that it could not "overlook the enormous economic impact [Stanislaw's] conduct had on the parties." It concluded that the stronger argument compelled the court to assign most of the marital assets to Lesko. As to the insurance policies, contrary to Stanislaw's contention, the record is clear that the parties disagreed about how the life insurance debts should be divided. The court understood that the parties differed on this point, and awarded each of the parties his or her respective life insurance policy together with the associated debts.

[¶20]   We conclude that the evidence in the record supports the court's distribution of the marital property, including its treatment of the debts on the parties' life insurance policies.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Glen L. Porter, Esq., and Megan E. Randlett, Esq., Eaton Peabody, Bangor, for appellant Theodore Stanislaw

Sandra Hylander Collier, Esq., Collier Law Offices, Ellsworth, for appellee Lisa Lesko

**At oral argument:**

Glen L. Porter, Esq., for appellant Theodore Stanislaw

Sandra Hylander Collier, Esq., for appellee Lisa Lesko

Ellsworth District Court docket no. FM-2010-353