MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 111
Docket:        Lin-13-551
Argued:        June 11, 2014
Decided:       September 18, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

PATRICK A. BURROW

v.

RACHEL L. BURROW

SAUFLEY, C.J.

[¶1]  Patrick A. Burrow appeals from a divorce judgment and rulings on post-judgment motions for findings of fact and conclusions of law entered by the District Court (Wiscasset, *J.D. Kennedy, J.*).  Patrick argues that the court misapplied the law, erred in reaching factual findings, and abused its discretion when it set apart to Rachel L. Burrow $75,000 of the value of the parties' marital real property before it equally divided the rest of the value.  We discern no legal error, but, because of a factual error, we vacate the judgment and remand for further proceedings.

## I.  BACKGROUND

[¶2]  The court found the following facts, which, except where noted, are supported by competent evidence in the record and are not in dispute.  *See Lesko v. Stanislaw*, 2014 ME 3, ¶ 17, 86 A.3d 14.  The parties met in Florida, and Patrick

2

moved into Rachel's home there in 2000. Patrick and Rachel's son was born on October 1, 2001. In 2002, the parties moved into a rental property in Maine. Sometime thereafter, Rachel's parents retired to Rachel's Florida property, and Rachel deeded the Florida property to herself, her parents, and Patrick.

[¶3] In 2003, Rachel's grandmother offered to sell her home in Maine to Rachel for $75,000. Rachel believed that the price was discounted because Rachel's grandmother wanted to keep the property in the family.[1] Rachel purchased the property by executing a $75,000 mortgage to her grandmother in August 2003. Her grandmother sold the property to Rachel on the condition that the grandmother be allowed to live in the house for the rest of her life. Rachel made payments on the $75,000 mortgage to directly to her grandmother. At first, Rachel, Patrick, and their son lived in another building on the property while Rachel's grandmother lived in the house, but they eventually moved into the house.

[¶4] Rachel's grandmother died in December 2004. Rachel and Patrick were married in January 2007. Between the 2003 purchase of the home and the parties' marriage in 2007, both Rachel and Patrick contributed funds and labor to improve the property. In 2007, after the parties were married, Rachel individually

---

[1] There is no evidence of any appraisal at the time of the sale, and the court did not—and, on the evidence presented, could not—determine the precise market value of the property at that time.

obtained a $75,000 bank loan, secured by a mortgage on the property. The value of the property at that time was $245,000. Rachel used a portion of the new loan to pay off her remaining debt to her grandmother's estate. The estate was then distributed to her grandmother's heirs, Rachel's mother and uncle. Following that distribution, Rachel's mother gave Rachel approximately $30,000. Rachel used that money to add a two-car garage to the property.

[¶5]  In 2011, Rachel deeded the property to Patrick and herself as joint tenants, and they obtained a $100,000 bank loan, again secured by a mortgage on the property. The value of the property at the time of the new mortgage was approximately $310,000.  Using some of the proceeds from the new loan, Rachel and Patrick paid off the earlier loan and applied the rest of the money to improve the property.  Over the years, the parties spent nearly $184,000 to make improvements.  At the time of the divorce, they stipulated that the value of the home was the value determined in the 2011 appraisal—$310,000.  There remained $95,000 to be paid on the mortgage.

[¶6]  Patrick filed a complaint for divorce in July 2012, and the parties proceeded to mediation in September 2012.  They resolved all of the issues regarding parental rights and responsibilities.  They agreed that Rachel would have primary residence and receive $135 per week in child support.  Patrick also voluntarily released his interest in the Florida property to Rachel and her parents.

4

The parties later agreed to a roughly equal division of accounts and personal property worth a total of about $85,000 to $95,000. No spousal support was requested or awarded.

[¶7] A trial was held in February 2013 on the sole remaining issue in contention—the disposition of the real property. After hearing the evidence, the court announced its decision from the bench. In so doing, the court appears to have incorporated a concept of law that had been previously superseded. Despite the fact that the property had been deeded to the parties jointly by Rachel, the court noted, "I do believe that the concept of tracing is still alive." Apparently applying the "source of funds" rule, *see Tibbetts v. Tibbetts*, 406 A.2d 70, 76 (Me. 1979), it determined that, if the concepts of tracing were strictly applied, Patrick might not be entitled to *any* interest in the home, but it concluded that such a disposition would be inequitable. It therefore awarded the home, with all of its equity, to Rachel and ordered her to make an equitable payment of $25,000 to Patrick. The court entered a written divorce judgment that incorporated this disposition of property.

[¶8] Both parties moved for findings of fact and conclusions of law. *See* M.R. Civ. P. 52(a). The court entered an order indicating that it would reconsider its allocation of the value of the real property. After a nonevidentiary hearing, the court vacated its earlier judgment with respect to the real property and entered a

judgment on October 10, 2013, that increased the equitable payment to Patrick to $77,500.

[¶9]   In that final judgment, the court estimated the amount that Rachel received from her mother after Rachel's grandmother died, finding that Rachel's "mother, who was the personal representative of the estate, gifted her portion of that payoff to [Rachel], an amount of over $30,000." That estimate was consistent with Rachel's testimony that she used proceeds from her 2007 loan to pay $64,000 or $68,000 to the estate to satisfy her remaining debt to her grandmother, and that her mother then "gave [her] the 30 grand," representing the share of the proceeds that her mother inherited from the grandmother's estate.[2]

[¶10]   The court found that the real property was entirely marital and accepted the parties' stipulated value of $310,000. Subtracting the $95,000 still owed on the mortgage, the court found that the parties' equity in the property was $215,000.   The court "set aside" $75,000 of the equity "as having been gifts to [Rachel] from her mother and grandmother," and it divided the remaining $140,000 equally. The court also added $7,500 to the equitable payment owed to Patrick to account for his release of his interest in the Florida property. As a result,

---

[2]   Later in its judgment, however, the court mischaracterized the gift as an "inheritance from her grandmother's estate of $37,500." That exact amount, which would represent one-half of the original mortgage's value, is not supported by the record, and the money was a gift from her mother, not an inheritance from her grandmother.

the court distributed $77,500 of the equity to Patrick and $137,500 to Rachel, amounting to a $60,000 difference overall.

[¶11]  Patrick timely appealed.  *See* 14 M.R.S. § 1901(1) (2013); M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶12]  Patrick has raised legal, factual, and discretionary issues challenging the court's distribution of the equity in the marital home.  He argues that the court improperly applied the legally superseded "tracing" approach, that the court was factually incorrect in its estimate of the value of gifts given to Rachel by her family, and that the court abused its discretion in disposing of the parties' equity. We address each of these issues separately.

A.    Application of Law

[¶13]  Title 19-A M.R.S. § 953(1) (2013) "establishes the three-step process that a court must use when disposing of property in a divorce judgment." *Miliano v. Miliano*, 2012 ME 100, ¶ 14, 50 A.3d 534.  The trial court must "(1) determine what of the parties' property is marital and non-marital, (2) set apart each spouse's non-marital property, and (3) divide the marital property between them in such proportion as the court deems just." *Id.* (quotation marks omitted).

[¶14]   In determining whether property is marital, if one spouse has transferred title of nonmarital property held by that spouse into joint tenancy with

the other spouse, a presumption arises that the property is marital property. *Id.* ¶ 23. This has not always been the law in Maine. Before 1980, we applied the "source of funds rule," which required a divorce court to "trace[] the contribution of funds and set[] apart, as *nonmarital property*, a portion of property in joint tenancy in proportion to the contribution of the nonmarital funds to the acquisition of the property." *Spooner v. Spooner*, 2004 ME 69, ¶ 13, 850 A.2d 354 (emphasis added) (citing *Tibbetts*, 406 A.2d 70). In 1980, we "adopted the transmutation doctrine and said that when one spouse transferred title of real estate from sole ownership into joint ownership with the spouse, the transfer evidenced the spouse's intent to gift the property to the marital estate." *Id.* ¶ 14 (citing *Carter v. Carter*, 419 A.2d 1018 (Me. 1980)). In 1997, we advanced that concept one step further, holding that, "when real estate owned by one spouse before the marriage was placed into joint title by that spouse, the real estate was marital, and the motivation of the spouse in transferring title was irrelevant." *Id.* ¶ 16 (citing *Long v. Long*, 1997 ME 171, ¶¶ 5, 15-18, 697 A.2d 1317).

[¶15] The evolution of the law of marital property reflects the shared or joint enterprise theory of marriage. *See id.* ¶¶ 16, 24-25, 29, 850 A.2d 354. Once the parties have transferred previously nonmarital property into the marriage, a "tracing" of the value of the previously nonmarital component of the property is no longer undertaken or appropriate. *See Long*, 1997 ME 171, ¶¶ 15-17, 697 A.2d

1317. We clarified in *Long*, however, that, when the court reviews "all relevant factors" to dispose of the marital property, 19-A M.R.S. § 953(1), a court may "properly weigh[] the contributions of each spouse to the residence," including the "'traceable contribution' to the purchase price and . . . contributions over the length of the marriage," *id.* ¶ 23. Thus, "[e]ven after *Long* . . . the divorce court remains free to consider the 'traceable contributions' made by each spouse towards the acquisition of the jointly-owned real estate in arriving at an equitable distribution of the property." Levy, *Maine Family Law* § 7.6[4][b] at 7-40 (8th ed. 2013) (citing *Long*, 1997 ME 171, ¶ 23, 697 A.2d 1317).

[¶16] Patrick contends that the trial court here reverted to applying the "source of funds" rule by, de facto, setting apart a nonmarital interest in the property for Rachel through "tracing." We review the trial court's "application of statutory law de novo." *Finucan v. Williams*, 2013 ME 75, ¶ 19, 73 A.3d 1056.

[¶17] Although the court appears to have initially applied the obsolete "source of funds" rule to the property held jointly by the parties,[3] the court appropriately clarified its application of the law when it ruled on the parties' post-judgment motions and determined that the property was entirely marital property. Rachel's transfer of the property into joint tenancy after the parties'

---

[3] Because the court did not initially issue an extensive written divorce judgment, we cannot determine with certainty whether, in referring to "tracing" and distributing to Patrick only $25,000 in an equitable payment, the court was applying the "source of funds" rule.

marriage rendered the real property presumptively marital. *See* 19-A M.R.S. § 953(3) (2013); *Spooner*, 2004 ME 69, ¶ 18, 850 A.2d 354. No evidence was presented to overcome that presumption, and the court correctly concluded that the entire asset was marital property.

[¶18] Thus, the question presented is whether the court's judgment, although purporting to dispose of marital property based on "all relevant factors," 19-A M.R.S. § 953(1), impermissibly had the effect of setting apart some portion of the marital equity in the real property as if it were nonmarital.[4] We conclude that it did not. Although the use of the phrase "set apart" in the court's judgment could be read to indicate a judicial determination that the property set apart represented a nonmarital component, it is much more likely that the phrase simply describes the court's mathematical process. The court acknowledged the law on point, and referenced its responsibility to consider "all relevant factors," *id.*, including "[t]he contribution of each spouse to the acquisition of the marital

---

[4] When the "source of funds" rule was in force, components of property were set apart as being *nonmarital*—and therefore not divisible between the spouses upon divorce—"in proportion to the contribution of the nonmarital funds to the acquisition of the property." *Spooner v. Spooner*, 2004 ME 69, ¶ 13, 850 A.2d 354. Thus, under a pure application of the "source of funds" rule, the court would have determined how much of the current value was attributable to the investment of nonmarital funds in the property and set that amount aside as *nonmarital* and not subject to disposition by the court.

10

property," *id.* § 953(1)(A), in its ultimate disposition of the marital asset.[5] Accordingly, although the court may have erred initially in applying concepts related to the source of funds rule when disposing of the marital real estate, it ultimately corrected any error and carried out its statutory responsibility to distribute that marital property after considering all relevant factors.

B.      Factual Findings

[¶19]  We turn then to Patrick's argument that the court erred factually in determining that Rachel's family had given her $75,000 in gifts that were applied to improve the house.  Specifically, Patrick challenges the court's finding that Rachel received more than $30,000 as a gift from her mother and that the value of the property at the time Rachel purchased it from her grandmother exceeded her purchase price of $75,000, making the value in excess of $75,000 a gift to her.

---

[5]  A court, in disposing of marital property, must

> divide the marital property in proportions the court considers just after considering all relevant factors, including:
>
>> **A.** The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
>>
>> **B.** The value of the property set apart to each spouse; and
>>
>> **C.** The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live in the home for reasonable periods to the spouse having custody of the children.

19-A M.R.S. § 953(1) (2013).

[¶20]  "We review a divorce court's determination of the value of marital property for clear error." *Peters v. Peters*, 1997 ME 134, ¶ 14, 697 A.2d 1254. "Where, as here, a request for findings is made pursuant to M.R. Civ. P. 52(a), we do not assume that the trial court made all the findings necessary to support its judgment." *Jarvis v. Jarvis*, 2003 ME 53, ¶ 18, 832 A.2d 775. "Instead, we review the original findings and any additional findings made in response to the motion for findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Id.* The court's "explicit findings must be based on the evidence in the record and must be sufficient to support the result and to inform the parties and any reviewing court of the factual and legal basis for the trial court's decision." *Douglas v. Douglas*, 2012 ME 67, ¶ 26, 43 A.3d 965 (citations omitted).

[¶21]  Based on the testimony of the parties, the court may have found that the $75,000 price that Rachel paid when she agreed to buy the real property from her grandmother was below market value, even when the grandmother's life estate is taken into account, although the record contains no evidence from which the value of the property in 2003 can be estimated. There was also evidence from which the court could find that Rachel's mother gave her a gift of cash of more than $30,000 after the grandmother's estate was distributed. Thus, the record supports the court's basic findings that Rachel received family gifts and that those

gifts contributed to the value of the marital property. In disposing of the equity in the marital home, the court had the authority to credit Rachel for those gifts. *See Long*, 1997 ME 171, ¶ 23, 697 A.2d 1317; Levy, *Maine Family Law* § 7.6[4][b] at 7-40.

[¶22]  The court could not credit Rachel for the family gifts, however, without determining the approximate value of those gifts based on evidence in the record. *See Jarvis*, 2003 ME 53, ¶ 18, 832 A.2d 775. The court determined that the gifts had a total value of $75,000, but it did not explain how it reached that finding. We must determine whether competent evidence in the record supports the court's determination of the gifts' value. *Id.*

[¶23]  The record supports the court's factual finding that the gift from Rachel's mother was in an amount slightly greater than $30,000. The record provides no evidentiary support, however, regarding the value of the initial gift that Rachel's grandmother gave to Rachel by selling the property to her for less than its fair market value. When Rachel purchased the property for $75,000, the property may have been worth $75,000 or something different, but no evidence in the record provides any basis for estimating that amount.

[¶24]  Thus, there are two deficiencies in the findings. First, because the court did not explain how it arrived at the $75,000 value for the two gifts, its findings are not "sufficient to support the result and to inform the parties and any

reviewing court of the factual and legal basis for the trial court's decision." *Douglas*, 2012 ME 67, ¶ 26, 43 A.3d 965. Second, upon review of the record, we can discern no evidentiary basis for the total value of $75,000 that the court attached to the gifts. Accordingly, we must vacate the factual findings of the court regarding the value of the gifts to Rachel. Because those factual findings must be set aside, the division of the equity between the parties must be decided anew.

C.      Overall Disposition of the Marital Property

[¶25]  Because we conclude that the court erred in its factual findings, we do not reach Patrick's argument that the court erred in its overall equitable disposition of the property. On remand, the court must dispose of the property upon consideration of all relevant factors, *see* 19-A M.R.S. § 953(1), and, in doing so, reach an equitable result regarding the overall property distribution.

[¶26]  Finally, we note that the trial judge in this matter has retired fully from the bench. To prevent further expense to the parties, we urge the newly assigned judge or justice to make the necessary factual findings and final allocation of the equity in the real property based on the record already created. Ultimately, however, the next steps in the process will be determined within the discretion of that jurist.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

**On the briefs and at oral argument:**

Patricia V. Shadis, Esq., Newcastle, for appellant Patrick A. Burrow

William M. Avantaggio, Esq., Damariscotta, for appellee Rachel L. Burrow

Wiscasset District Court docket number FM-2012-133
FOR CLERK REFERENCE ONLY